Bland, Chancellor.
These pleas have been set down for hearing without a replication; consequently, the sole object is to obtain the judgment of the court on their sufficiency as they stand at this stage of the proceedings. The bill charges, in substance, not only, that the defendant for a valuable consideration became indebted to the intestates of the plaintiffs; but it also goes on to allege, that the defendant afterwards paid a part of the debt; and that although he, “ well knows and has repeatedly admitted the said sum of money and interest to be due, and has promised at various times to pay the same,” yet he has not done so.
It is perfectly well settled, that a partial payment is such an acknowledgment of the existence of the debt as will take the case out of the statute of limitations. But in this case, the partial payment referred to was made on the 16th of October 1793, and this suit was not instituted until the 29th of November 1825, a lapse of more than thirty years. This, therefore, is clearly not such an allegation, as if admitted to be true, would take the case out of the statute of limitations. But the subsequent promises, charged to have been made by the defendant, certainly would prevent the statute from being applied as a bar if admitted to be true.
It is an established principle, that where any allegation of the bill would avoid the bar created by the statute, such allegation must be specially denied by an answer in support of the plea; for otherwise, it will be taken as true, and the plea can then be no bar; because it will appear upon the face of the proceedings to have been sufficiently avoided. There is, in this case, no answer denying the subsequent admissions and promises charged to have been made; consequently, they must be taken for true, and are an ample avoidance of the pleas; which, therefore, can be of no avail whatever.
In the case of Morgan v. Roberts the defendant put in three pleas. No objection was made on the ground, that a defendant could not in equity, as well as at common law under the statute, be allowed to plead two or more pleas in his defence; and I sustained two of them, and overruled the third. Since then my attention has been particularly called to this point. This matter in England seems to be not yet finally settled, (a)
At common law, in almost all criminal cases, the accused is *494 allowed to plead, at the same time, two or more pleas in bar ;(b) and, in all civil cases, the defendant is allowed, by the statute of Ann, which has always been the received law here, to plead double. Equity follows the law; and the peculiarly liberal principles of our code seem to require, that this court should not be more technical, or less willing than a court of common law, to receive the defendant’s defence in any number, or variety of forms deemed necessary by him, to render it completely effectual; for the reason why duplicity should not be allowed in the same plea, does not apply as against several distinct pleas, (c) Although a plea is not the only mode of defence in chancery; and there may not be as great a necessity to allow a defendant to plead double in equity as at law; yet it is sufficient, that justice may in most instances be promoted by it; and that no positive mischief is likely to arise from it in equity more than at law. Long experience has satisfied every one of its utility at law; and there is no apparent sound reason which forbids the adoption of a similar practice in courts of equity.(d)
*495 These pleas, in the first place, aver, that the cause of action arose aboye twelve years before the institution of the suit; and then *496 farther say, that the defendant did not promise or assume to pay the debt at .any time within twelve years before the complaihants filed their bill. Regarding these allegations as two distinct pleas, they are, as pleaded, each of them, informal and wholly insufficient. And, taking them as one plea, it is multifarious and double. Duplicity is a vice in pleading, and singleness is no less necessary in equity than at law. This plea must, therefore, be overruled, (e)
The object of this bill is to enforce an equitable lien by a vendor against a vendee, and to have the land sold, in virtue thereof, for the payment of' the balance of the purchase money. Whether a plea, that the cause of action had been more than twelve years standing grounded on the act of assembly,(f) in any, the most correct form, would avail against a claim of this kind, does not appear to have been at ail considered, or alluded to. I shall therefore express no opinion upon the subject.
Whereupon it is ordered, that the said pleas be and the same are hereby overruled : and the defendant is required to make a good and sufficient answer to the plaintiffs’ bill of complaint on or before the fifteenth day of February next.
The defendant filed his answer within the time prescribed; in which he admitted the purchase and possession, but relied on the lapse of time, &c. The plaintiff put in a general replication; and commissions were issued and testimony taken and returned; after which, with the leave of the court, the plaintiffs so amended their bill as to make the heirs at law of the late James Pattison, who at the time of his death was seized of the whole legal title to the lands, parties plaintiffs in this suit.
*497 26th August, 1828. — Bland, Chancellor. — This case standing ready for hearing, and.having'been submitted on notes by the respective solicitors, the proceedings were read and considered.
It appears, that James Pattison in the year 1787, was seized in fee of a tract of land called Hunt's Mount, containing one hundred and sixty acres, the one half of which he held as his own, and the other moiety in trust for the use of John Westeneys ; that, on the 24th of December 1787, they sold this land to Walter Harrison, for the sum of four pounds per acre, the one-fourth of the purchase money to be paid on the first of May 1789, one other fourth on the first of September following, and the other two-fourths on the first of September 1790; the whole to bear interest from the time Harrison obtained possession. Other stipulations are contained in the contract, but they have no material bearing upon the matters put in issue between the parties to this suit. The land was accordingly delivered to Harrison on the 24th of December 1787, and he has had peaceable possession of it ever since. He made several partial payments, the last of which was on the 16th of October 1793, but there is no proof, that he ever made any other or further payments since that time. This contract and these payments are shewn by a bond, marked as the plaintiffs’ exhibit A, given by Harrison to Pattison and Westeneys, dated on the 24th of December 1787, with the acknowledgements of the payments endorsed thereon. Some time after these transactions Pattison and Westeneys died.
The defendant in his answer admits the contract for the land, and his possession of it as stated in the bill, but he says, that in pursuance of his contract he made, at different times, considerable payments, but from the length of time is unable to state the precise amount of each; and does not admit, that he has obtained credit for all he has paid ; nor can he admit, that any part of the purchase money is due from him; and he denies that he has admitted to any one, that any part of said money was due, or that he has promised at any time to pay the same. He then alleges and pleads in bar of the plaintiffs’ claim, that the debt, in the condition of the writing obligatory mentioned, has been standing and in action above tioelve years before the institution of this suit, therefore he relies upon the act of limitations. In addition to which he relies upon the great lapse of time since the debt became due, and before this suit was brought, as furnishing evidence of the payment of the said debt. Thus it appears, that the defendant rests his defence *498 upon a denial of the admissions and promises charged in the bill; upon the positive bar of the statute of limitations in relation to bond debts ; and upon the presumption of payment arising from the lapse of time.(g)
The defendant’s solicitor seems to have considered the contract, upon which this suit has been instituted, as a mere stipulation for the payment of money, and nothing more. But there is a substantial distinction between a loan of money and a sale of property. In a contract of loan there never is any other intention than that of creating the relation of debtor and creditor; and the contract is as complete, and the relation of debtor and creditor attaches as firmly without as with a written evidence of the debt. A mortgage, bond, or note, given as a security, is a mere accidental circumstance in a transaction concluded and complete by the advance of the money. The stipulation entered into as a security is an addition which does not arise as an incident, or in any respect follow as a necessary legal consequence of a contract of-loan. In a sale of real estate the principles of equity are materially different. In purchase, payment is an essential part of the contract; consequently, where the whole, or any part of the purchase money remains unpaid, it is an established general rule, derived to us from the civil law, that the vendor holds a lien upon the estate sold for the purchase money unpaid. The adjudications upon the subject have occasioned some difficulty in ascertaining what shall amount to a waiver or relinquishment of this equitable lien; but it is perfectly well settled, that in every case of a purchase of real estate, where there has been no such waiver or relinquishment, the vendor has a lien upon the property sold to secure the payment of the purchase money, as against the vendee, his heirs, and all others who take under him with notice. This vendor’s lien is an equitable incident uniformly and necessarily arising from, and associated with every contract of bargain and sale of real estate, where the purchase money is not paid; and, is considered as parcel of the contract itself, unless it be shewn to have been tacitly or expressly abandoned. (h)
The case presented by this bill is one arising on a contract of bargain and sale of real estate with an incident lien for the pay- *499 merit of the purchase money. It is this, or there is nothing in the bill to give the court jurisdiction; for, if it were a mere loan, in which the relation of debtor and creditor was created, to which was added the security of a bond, to insure the payment of the debt due, the plaintiffs would have a complete remedy at law, and this court could not take cognizance of the case; nor would the prayer in the bill for an account give the court jurisdiction, since the case is not, in itself, a proper one for an account, — there being no mutual dealings which give rise to a series of charges on one side as opposed to a variety of payments on the other, (i) This is a single stipulation and charge; and the object is to enforce the equitable lien as being a part of the contract of sale.
This equitable lien is to be found classed, in all the books, with mortgages; it is however not precisely the same, in all respects, as an ordinary mortgage, given as a security for a loan of money: but it is a specific lien, in most respects so strongly analogous to the specific lien of a common mortgage, that they have been almost altogether regulated by the same principles of equity. But these securities, — neither the incident, nor the express lien as by mortgage, — should not be confounded with mere personal securities, or obligations for the payment of money of any class .or grade whatever. A bond, promissory note, or simple contract for the payment of money, in any shape or form, is a personal contract which surely cannot, either at law or in equity, be assimilated to, or governed by the principles applicable to a mortgage of any description.
These plaintiffs do not ask to have their specialty or simple contract enforced as a means of obtaining payment from their debtor. They do not plant themselves on the mere relation of creditors against this defendant as their debtor. They are here as vendors against the defendant as their vendee ; and they claim the benefit of the lien which they hold as an incident of that relationship. As mortgagees they sue this defendant as the mortgagor of certain property, which they ask to have sold to satisfy the balance due upon that mortgage. This is the light in which this controversy must be considered; consequently, the statute of limitations in relation to bonds and simple contracts for the payment of money can have no sort of application to this case.
This equitable lien is so far a mortgage, that the limitation or *500 presumption of satisfaction arising from the lapse of twenty years, as applicable to ordinary mortgages, does, in like manner, furnish evidence, or a presumption, that such equitable lien has been satisfied or discharged. An equitable lien is founded upon the principle, that the legal title has not been parted with, or ought not to be considered as completely vested in the vendee until the whole purchase money has been paid; because it is deemed unjust to consider any one as the absolute legal owner of property which he has purchased, but has not paid for. If the whole legal title remains in the vendor, he may bring an ejectment, to which a limitation of not less’than twenty years is a bar: but if the formal legal title has been parted with by the vendor before payment, then his having so ceded it, gives him an equitable right to enforce payment here with all the advantages he had as the actual holder of the legal title; that is, as a mortgagee coming here to foreclose; in which case, by analogy to the statute of limitations, no' time short of the lapse of twenty years is ever deemed sufficient to raise a presumption of satisfaction. This court has repeatedly acted upon these principles.(j)
This bill has been treated by the defendant as a suit instituted to recover the money secured by the bond alone, or a debt due by simple contract. If that were the fact, the conclusions which he has deduced, it is admitted, must inevitably follow. But it has been shewn that such is not the fact; and the circumstance, of the purchase money having been secured by a bond, in addition to the security of the equitable lien, cannot in the slightest degree affect the plaintiffs’ right to the relief they ask by this bill. In all cases of the sale of real estate the purchase money, if not paid, may be secured in various ways. The vendor may take a mortgage, but by doing so he virtually waives his equitable lien; he may take a bond, and also a note in addition to a mortgage, or the equitable lien, of which the bond or note will not generally amount to a virtual waiver. If he takes all these assurances, then it is well settled, that he may proceed at law and in equity upon each of them at one and the same time, and recover upon all, although he can have but one satisfaction. (k) To his ejectment at law and bill in equity to foreclose, twenty years is the limitation ; to his suit upon the bond, twelve years constitutes a bar; and to his action *501 upon the simple contract a limitation of three years is a bar. But although in the actions upon the bond and the simple contract judgment may be rendered against him, upon the plea of limitation applicable to each, that cannot, in any manner, affect his remedy by ejectment or the bill to foreclose.(l)
It appears, that more than thirty-twó years have elapsed since the last payment before this suit was institutéd. This great lapse of time affords ample ground for the presumption of satisfaction upon which the defendant relies ; and if not explained or repelled must be admitted to be a complete bar to the plaintiffs’ claim. Lapse of time operates as a bar, because of its raising a presumption either, that the claim never existed, or if it had once existed, that it has been, satisfied. It cannot however be presumed, that this claim never existed, because that is expressly admitted by the defendant himself; consequently this lapse of time can only be insisted on so far as it' affords a presumption of satisfaction. The defendant avails himself of it in like manner as he might have done of positive proof of payment. He adduces and relies upon it as evidence to sustain an allegation of payment, (m)
But the defendant does not frankly and directly declare, that he had actually paid the whole amount of the purchase money. After expressly admitting the contract, he then says, he does not admit, that he has obtained all the credits he ought to -have; he denies that he admitted to any one, that any part of the purchase money was due, or that he promised to pay it; and he does not admit, that any part of the purchase money is due from him. Ail this, according to the letter, may be true, and yet the defendant may well know in his conscience, that he has not paid the whole purchase money. If he knew he had actually paid it, why not expressly say so, instead of saying he did not admit that any part of it was due from him ? Perhaps, by a sort of mental reservation he meant to say, he did not admit' it was due, not because he could, with a clear conscience, say he had, in reality, paid it; but, being authorized to rely upon the presumption arising from the lapse of time, he therefore did not admit it was due from him. This is certainly a very stale claim; but its being so ought not to be received as an apology for the slightest departure from that frankness which the court always expects from a defendant when *502 called on to speak of matters within his own knowledge. But although this very guarded language of the defendant does look a little suspicious, yet it must be admitted, since no exception has been taken to his answer, that he has said enough to entitle him to rely upon the presumption of satisfaction.
The witness Lewis Sutton says, that the defendant admitted to him early in the year 1820, that he had not then paid the whole amount of the purchase money. This testimony positively contradicts one of the defendant’s allegations, and diminishes the extent of the presumption relied on by him: it is calculated to shake our faith in his answer. Still, the claim is a stale one; and there is some scope left on which to rest a presumption of satisfaction.
The witness Benjamin Carr says, that about February 1825, he had a conversation with the defendant Walter Harrison relative to the agreement between him and Westeneys and Pattison for the purchase of a tract of land called Hunfs Mount in Ann Arundel county: that the defendant commenced the conversation by-informing him that Pattison and Moreton had laid down the land, and that they were now contending for it; that the first payment which he, Harrison, had made, was made in tobacco; after which payment there was a dispute took place between Pattison and Westeneys, each forbidding him, Harrison, from making any further payment to the other ; and Harrison said he afterwards deposited the purchase monfey for said land in the bank.” This testimony, which has not been in the slightest degree impeached, does most satisfactorily, when taken in connexion with all the circumstances of this case, repel the presumption, and account for the delay, (n) Payment was not urged because of the dispute between those who were to receive; while that controversy continued, the defendant might have been very unsafe in paying to either of them; and therefore it was to his advantage to wait until they united in the demand or made it in this way by a suit, or in such other form so as he could be assured the payment might be safely madé.
Whereupon it is decreed, that the defendant Walter Harrison, on or before the 26th of September next, pay or bring into this court to be paid to the said plaintiffs, Joseph More-ton, administrator de bonis non of John Westeneys, and to James I. Pattison, administrator de bonis non of James Pattison, to each *503 one an equal moiety of the sum of $4,641 21, with legal interest on $1,501 20, part thereof, from this day until paid or brought in, together with all the costs of this suit incurred by each of the said complainants : and, that on the defendant’s failing to pay or bring into court the said sum of money with interest and costs as aforesaid, the property in the proceedings mentioned be sold for the payment thereof; that Augustus E. Addison be and he is hereby appointed the trustee, &c. &c.
In pursuance of this decree the land was sold, and the sale having been finally ratified, on the 30th June 1829, the proceeds were paid to the plaintiff Moreton, to whom they were shewn to belong exclusively, in consequence of the other plaintiff Pattison having received satisfaction to an equal amount.

 Whitbread v. Brockhurst, 1 Bro. C. C. 417; 2 Ves. & Bea. 153, note; Gibson v. Whitehead, 4 Mad. 241; Van Hook v. Whitlock, 3 Paige, 419; Beam. Pl. Eq. 14; Mitf. Pl. 296; Wyat's Pra. Reg. 280.

 2 Hawk. c. 23, s. 128, 137; 2 Hale Pl. Cro. 239, 248; The King v. Gibson, 8 East, 107; The Commonwealth v. Myers, 1 Virg. Ca. 188.

 2 Mont.Dig. 99, 100.

 1829, ch. 220. — Ridgley v. Wakfield. — This bill, filed 5th May 1779, states, that the plaintiff and defendant deduce their title to certain land from a certain Richard Davis, but that the conveyance from one of the sons and devisees of Davis to the defendant, had in fact conveyed to him more than it was intended and meant to convey. Prayer, that the defendant might be confined to the true extent of the grant, &c. — To this bill the defendant presented the following defence.
The pleas and demurrer of Seth Warfield to the bill of complaint of Henry Ridgley. — The said defendant by protestation, not confessing or acknowledging all or any of the matters or things in and by the said bill of complaint set forth and alleged to be true, in such manner and form as the same are therein set forth; as to so much and such part of the said bill, which seeks a discovery or relief from this defendant relating to any parol contract, or agreement made or supposed to be made between Thomas Davis and Stephen Steward, in the said bill mentioned, for the said tract of land called Davis’s Purchase, or any part thereof different or variant from the deed said to have been executed in the said bill, on or about the twenly-ninth day of November seventeen hundred and fifty-six, by the said Thomas Davis to the said Stephen Steward; and as to so much of the said bill which seeks a discovery or relief from this defendant relating to any parol contract or agreement made or supposed to be made between the said Stephen Steward and this defendant for the said tract of land called Davis’s Purchase, or any part thereof, different or variant from the deed or conveyance said to have been executed, (in the said bill,) on or about the fourteenth day of December seventeen hundred and sixty-two, by the said Stephen Steward and Joshua Davis to this defendant: He, this defendant, doth plead, that by an act of Parliament, made in the twenty-ninth year of the reign of his late Majesty King Charles the second, entitled an Act for prevention of Erauds and Perjuries, it is, amongst other things, enacted; that, from and after the twenty-fourth day of June sixteen hundred and seventy-seven, no action shall be brought, whereby to charge *495 any person upon any contract of lands, tenements or hereditaments, or any interest in or concerning them, unless the agreement, upon which such action shall he brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith or some other person thereunto by him lawfully authorized; as by the said act may appear; and this defendant avers, that neither the said Thomas Davis, nor any person by him lawfully authorized, did ever make or sign any contract or agreement in writing for the sale or conveyance of the said tract of land called Davis’s Purchase, or any part thereof, to the said Stephen Steward to any such effect, as by the said bill is suggested, or any memorandum or note in writing of any agreement whatsoever for or concerning the said premises, or any part thereof; other than or different from the said deed, alleged in the said bill to have been made by the said Thomas Davis to the said Stephen Steward; and this defendant also avers, that neither he, the said defendant, nor any person by him lawfully authorized, did ever make or sign any contract or agreement in writing with the said Stephen Steward respecting the said tract of land called Davis’s Purchase, or any part thereof, or any memorandum or note in writing of any agreement whatever, for or concerning the said premises, or any part or parcel thereof; and, therefore, this defendant doth plead the said act of parliament, and the matters aforesaid in bar to so much of the said bill as seeks to compel the defendant to execute any deed or conveyance to the complainant of the aforesaid premises, or of any of them, or of any part or parcel thereof pursuant to tire said pretended agreements or either of them; and as to any relief thereby prayed touching the said agreements or either of them; and humbly prays the judgment of this Honourable Court whether he shall be compelled to make any further or other answer to so much and such parts of the said bill as are herein before and hereby pleaded unto as aforesaid.
And this defendant for further plea unto the said hill saith, that if the complainant, or any of those from under whom he claims, ever had any cause of suit for or concerning any of the matters, transactions, or things in the said hill of complaint mentioned, (which this defendant doth in no sort admit,) the same did accrue or arise above twenty years before the filing the complainant’s bill of complaint; and above twenty years before the serving this defendant with any process to appear to and answer the same, 'during all which time the said Stephen Steward, and all those claiming under Mm have constantly acquiesced under the said deed or conveyance alleged to have been made to him by the said Thomas Davis; that is to say, from the time of making the same until' the time of filing the complainant’s said hill; Wherefore this defendant doth plead the 'act of parliament or statute of limitations made in the twenty-first year of lung James the first; and also the length of time and acquiescence, and prays the benefit of the same; all which matters this defendant doth aver and plead in bar of the complainant’s said hill, and of the complainant’s pretended demands for which he seeks to he relieved by the said bill.
And this defendant further saith, that he is advised by his counsel, that, there is good cause of demurrer to the said hill, and that there is no matter or thing in the said bill contained good and sufficient in law to call this defendant in question in this honorable court for the same; hut that there is good cause of demurrer thereto : and for cause of demurrer, this defendant saith, that, by the complainant’s own shewing, the said bill, (in case the allegations therein contained were true, which this defendant does in no sort admit,) contains not any matter of equity whereon this court can ground any decree or give the complainant any relief or assistance as against this defendant: wherefore and for divers other errors and imperfections in the said bill *496 appearing, this defendant doth demur in law thereunto; and humbly demands the judgment of this honourable court, whether he shall be compelled to put in any further or other answer to the said bill; and humbly prays to be hence dismissed with his reasonable costs in this behalf most wrongfully sustained.
Thomas Jenings, for Deft.
2d September, 1789. — Rogers, Chancellor. — Decreed, that the bill aforesaid of the complainant be dismissed, and the same is hereby dismissed; and that the said complainant pay to the said defendant his costs in this behalf expended. — Chancery Proceedings, Lib. S. H. H., letter B. 722.
N. B. Recollecting, as has been before explained, (H. K. Chase’s Case, ante, 217,) that a demurrer is overruled by a plea, it is obvious, that this decree must have been founded upon the propriety of thus pleading two pleas, and upon the validity- of one or both of the pleas.

 Whitbread v. Brockhurst, 1 Bro. C. C. 417; S. C. 2 Ves. & Bea. 153, note.

 1715, ch. 23, s. 6.

 Mitf. Plea. 306.

 Sug. Vend. & Pur. ch. 12; Pow. Mort. 1062; Brown v. Gilman, 4 Wheat. 256; Bayley v. Greenleaf, 7 Wheat. 46; Tompkins v. Mitchell, 2 Rand. 428.

 Dinwiddie v. Bailey, 6 Ves. 141; Smith v. Marks, 2 Rand. 449.

 Lingan v. Henderson, ante, 282.

 Pow. Mort. 966, note G.; Hughes v. Edwards, 9 Wheat. 494.

 Toplis v. Baker, 2 Cox. 123.

 Pow. Mort. 361, note, 1153, 1155; Chalmer v. Bradley, 1 Jac. & Walk. 63; Christophers v. Sparke, 2 Jac. & Walk. 233.

 Pow. Mort. 392.