[CHANCERY.]

## BAYLEY v. GREENLEAF and Others.

The vendor of real property, who has not taken a separate security for the purchase money, has a lien for it, on the land, as against the vendee and his heirs.

This lien is defeated by an alienation to a *bona fide* purchaser without notice.

Nor can it be asserted against creditors holding under a *bona fide* conveyance from the vendee.

*Quere,* Whether the lien can be asserted against the assignees of a bankrupt, or other creditors coming in under the purchaser by act of law?

The *dictum* of *Sugden* in his *Law of Vendors,* 364, examined, and questioned.

APPEAL from the Circuit Court for the District of Columbia.

This suit was brought by the appellant in the Circuit Court, for the county of Washington, for the purpose of subjecting a tract of land, lying within that county, which was sold by the plaintiff, Bayley, to the defendant, Greenleaf, to the payment of so much of the purchase money as still remains due. It appeared by the proceedings in the cause that in the year 1792 William Bayley, purchased from William B. Wor-

man, the land which is the subject of this suit, which he afterwards sold to James Greenleaf, to whom the title was made by Worman. A bond was given by Greenleaf to Bayley for the purchase money, which, in March, 1796, was surrendered to Greenleaf on his accepting bills drawn in favour of Clement Biddle, for its amount. Some of these bills were alleged to be unpaid, and were produced by the plaintiffs.

On the 30th day of September, 1796, James Greenleaf, being then greatly indebted, conveyed sundry estates, and among others, the land in controversy, to George Simson, in trust for the security of Edward Fox, who had entered into engagements for the said Greenleaf, to a very large amount. The deed was also made to secure the said Fox for any further advances he might make to, or engagements he might enter into, on account of the said Greenleaf.

On the 23d of March, 1797, George Simpson conveyed this land to the defendants, Pratt, Francis and others, as trustees for the uses and purposes mentioned in the deed from Greenleaf to Simpson. On the 26th of June 1797, a general deed was made to the same persons by Robert Morris, John Nicholson, and the said James Greenleaf, conveying to them the property mentioned in the deeds of the 30th of September, 1796, and of the 23d of March, 1797, with an immense mass of other property, for the payment of debts to a very great amount due from the said M. N. and G. which were enumerated in the said deed.

Some doubts having been entertained respecting the recording of these deeds, an attachment was sued

1822.

Bayley
v.
Greenleaf.

out by the trustees against the said Greenleaf, in the county in which the said lands then lay, on which judgment was obtained ont he 8th of February, 1798 ; and on the 28th day of the same month the land was sold under the judgment, purchased in for the trustees, and afterwards conveyed to them to the same uses and trusts as had been expressed in the original conveyance by deed dated in 1803.

In March, 1798, James Greenleaf took the benefit of the insolvent law of the State of Pennsylvania; and in November of the same year, he was also discharged under the insolvent law of the State of Maryland. In November 1803, he was declared a bankrupt under the laws of the United States. The plaintiff, William Bayley, also became a bankrupt under the laws of the United States in July, 1802.

The trustees alleged they had contracted to sell the land in controversy to James Greenleaf; but that he had not paid the purchase money, in consequence of which they retained the legal title.

This suit was brought in the year 1812, by William Bayley, and by James S. Morrell, as trusee for the creditors of the said Bayley, and executor of the original assignee of the bankrupt, who is dead.

Feb. 11th.

Mr. *Law* and Mr. *Key*, for the appellants, insisted that they had an equitable, subsisting, unwaived lien upon the land sold to the defendant, Greenleaf, for the amount of the purchase money. The law on the subject has been settled by a long and uniform current of decisions. The lien exists between vendor and vendee, and against subsequent purchasers

from the vendee with notice that the money remains unpaid, unless the parties, by some unequivocal act, waive the lien.[a]   It may also be asserted against purchasers, coming in by act of law, as assignees of a bankrupt, and against creditors claiming under a conveyance for their benefit : they are considered as volunteers.[b]   Nor has the lien, in this case, been waived.   Taking a covenant, bond, or note, is no waiver of the lien, if taken as a mode of payment, and not as a distinct security.[c]

Mr. *Jones*, contra, contended, that under the circumstances of the present case, the lien could not be asserted against creditors taking a *bona fide* conveyance from the vendee.   This is not a case where the party comes in by operation of law.   A creditor, who takes a conveyance for the security of his debt, stands in equal equity with one who pays his money, and is equally a purchaser.   The *dictum* of *Sugden* on this subject is not supported by the adjudged cases in England, or in this country.   Besides, the alleged debt due from Greenleaf to Bailey never attached any equitable lien to the land ;   Worman, and not Bailey, standing in the relation of vendor, and the true vendor being satisfied with the purchase money.

Mr. Chief Justice MARSHALL delivered the opinion of the Court, and after stating the facts, proceeded as follows :            <span>*Feb. 18th*</span>

[a] Brown v. Gilman, 4 *Wheat. Rep.* 255. and cases collected in note a.   Ib. 292. 297.

[b] *Sugd. Vend.* 364. and the cases there cited.      2 *Madd. Ch.* 105. Chapman v. Tanner, 1 *Vern.* 267.

[c] *Sugd. Vend.* 353. 1 *Sch. and Lefr.* 105.

In opposition to the claim of the plaintiffs, it is alleged by the defendants, that the debt of Bayley has been discharged. As they have not succeeded in supporting this allegation, it will be necessary to inquire whether, in such a case as this, the plaintiffs can assert a lien on the land sold by Bayley to Greenleaf, for so much of the purchase money as remains due.

It is contended for the defendants, that as the legal title to the estate was never in Bayley, he never had a lien upon it for the purchase money.

Upon this point, some difference of opinion exists in the Court ; and we pass it over without positively deciding it, for the purpose of inquiring, whether Bayley, supposing him entitled to the same rights as a vendor of the legal title, has now a lien on the estate for the purchase meney.

That a vendor, who has taken no other security for the purchase money, retains a lien for it on the land as against the vendee, or his heirs, seems to be well settled by the English decisions. It is equally well settled, that this lien is defeated by an alienation to a purchaser without notice. How far it may be asserted against creditors, seems not so well settled, and constitutes the subject of inquiry in this case.

The lien asserted by the vendor is not disclosed by any information given by a record. In *Chapman v. Tanner*, (1 *Vern.* 267.) the Lord Keeper said, " In this case there is a natural equity that the land should stand charged with so much of the purchase money as was not paid, and that without any special agreement for that purpose." In the case cited rom 1 *Bro. Ch. Ca.* 420. the Chancellor says, "A bar-

gain and sale must be for money paid, otherwise it is in trust for the bargainor. If an estate is sold, and no part of the money paid, the vendee is a trustee; then if part be paid, is it not the same as to that which is unpaid?"

But whether the lien of the vendor be established as "a natural equity," or from analogy to the principle that in a bargain and sale, the bargainor stands seised in trust for the bargainee unless the money be paid, still it is a secret invisible trust, known only to the vendor and vendee, and to those to whom it may be communicated in fact. To the world the vendee appears to hold the estate, devested of any trust whatever; and credit is given to him, in the confidence that the property is his own in equity, as well as law. A vendor relying upon this lien, ought to reduce it to a mortgage, so as to give notice of it to the world. If he does not, he is, in some degree, accessary to the fraud committed on the public, by an act which exhibits the vendee as the complete owner of an estate on which he claims a secret lien. It would seem inconsistent with the principles of equity, and with the general spirit of our laws, that such a lien should be set up in a Court of Chancery, to the exclusion of *bona fide* creditors. The Court would require cases in which this principle is expressly decided, before its correctness can be admitted.

The counsel for the plaintiffs say, there are such cases; and cite the dictum of *Sugden* in his *Law of Vendors*, and the cases he quotes in support of the position.

Mr. Sugden does indeed say, that persons coming

1822.

Bayley.
v.
Greenleaf.

in under the purchaser by act of law, are bound by an equitable lien, although they had no notice of its existence ; and he adds, that " creditors claiming under a conveyance from the purchaser, are bound in like manner as assignees, because they stand in the same situation as creditors under a commission."

Mr. *Maddock*, who also recites the cases on this subject, says, that the vendor has a lien on the estate sold " as against the vendee;and his heir, and all persons claiming as *volunteers*, or purchasers for a valuble consideration, *with notice*." He adds, " nor does the bankruptcy of the vendee affect the lien of the vendor." But he does not say, with Sugden, that " creditors claiming under a conveyence from the purchaser, are bound in like manner as assignees."

This lien has not, we believe, been extensively recognized in the Courts of this country. In the case of *Garson* v. *Green and others*, (1 *Johns. Ch. Rep.* 308.,) Mr. Chancellor KENT said, " the vendor has a lien on the estate for the purchase money while the estate is in the hands of the vendee ; and when there is no contract that the lien, by implication, was not intended to be reserved."

If the lien has, in any of the States, or in any Court of the United States, been sustained against creditors, the decision is unknown to us.

This is the first case in which the question, so far as respects creditors, has been made in this Court, and may form a precedent on a subject of great interest to the public. We have looked into the English authorities for the purpose of inquiring how far the principle has been firmly established in that country.

In *Chapman* v. *Tanner*, (1 *Vern.* 267.,) the lien of the vendor was maintained against the assignees of a bankrupt. But in *Fawell* v. *Heelis*, (*Ambl.* 724.) the Lord Chancellor, speaking of that case, says, " It appears by the Register's book, that the seller was to keep the title papers till he was paid. The Court said, that a natural equity arose from his having the deeds in his custody."

This explanation of the case of *Chapman* v. *Tanner* lessens the weight of that case in support of the lien, not only as against the assignees of a bankrupt, but as against the vendor himself, since the retaining of the title deeds by the vendor is considered as equivalent to an agreement for the preservation of the lien.

*Fawell* v. *Heelis* and others, reported in *Ambler*, was a suit to establish the lien of the vendor against the trustees of an insolvent debtor. The Chancellor determined against the lien, because a receipt for the purchase money was endorsed on the deed, and a bond taken for it from the vendee. " If" said the Court, "the vendor parts with the estate, and takes a security for the consideration money, there is no reason for a Court of equity to assist him against the creditors of the purchaser."

A doctrine ascribed to Lord APSLEY, that " creditors claiming under such a deed (a deed of an insolvent debtor to trustees for his creditors,) stand in the same situation as creditors under a commission," has been supposed to apply to the case now before the Court, and is cited by Mr. Sugden to support his general proposition, that " creditors claiming under

1822.

Bayley
v.
Greenleaf.

a conveyance from the purchaser are bound in like manner as assignees, because they stand in the same situation as creditors under a commission."

It is uncertain whether this was said by the Chancellor, as from himself, or with reference to the arguments of counsel; but if it be his dictum, it will not, we think, aid the plaintiffs in the cause under consideration; nor does it justify the broad and general terms used by Sugden; terms which have been probably understood in a more extensive sense than he intended. A declaration that creditors under a conveyance, and under a commission, are in the same situation as regards the lien of the vendor, made in a case in which the decree was against that lien, is not entitled to the respect which the same declaration would claim had the decree been made in favour of the lien. The Chancellor was against the lien, whether set up against assignees or trustees, and might not therefore examine very accurately the sameness or the discrepancy of the principles on which the two cases stood. Had he considered *Chapman* v. *Tanner*, as decided on the general principle, and not on its particular circumstances, it would have been necessary to inquire whether the same principle applied to the case of *Fawell* v. *Heelis and others ;* but not being of that opinion, and being opposed to the lien, the inquiry became less necessary.

Another consideration, entitled to great attention, is, that this dictum of the Chancellor, if it be one, is confined in terms to " such a deed" as was then under his consideration. That was a deed made by an insolvent, after his insolvency, to trustees for his cre-

ditors. This was, we suppose, a deed made in pursuance of the statute ; and between a deed assigning the estate of an insolvent under the insolvent law, and a deed assigning the estate of a bankrupt under the bankrupt law, there is not perhaps much difference. But it does not follow that the same rule would be applied to a conveyance made by the mere act of the party, for the security of one or more creditors, or of creditors generally.

The case of *Blackburn v. Gregson*, (1 *Bro. Ch. Rep.* 420.) was also an attempt to set up the lien of the vendor against the assignees of a bankrupt.

In that case, the general question of the existence of such a lien was argued at bar as one not yet finally settled ; and, although the inclination of the Chancellor's mind seemed in favour of the lien, he made no decision on that point. An issue was directed to try whether the conveyance was made to defeat creditors under the 13th of *Eliz.* ch. 5., and the jury having found that it was so made, the conveyance was set aside.

The question of lien appears to have remained still open ; and in the case of *Nairn v. Prowse*, (6 *Ves. jur.* 752.) it was still doubted whether a vendor who had taken the bond or note of the vendee for the purchase money, retained his lien on the land. That case was between a creditor who claimed under an equitable mortgage created by the deposit of a deed, and the vendor who had taken a deposit of stock to secure the payment of the purchase money. The Court determined, that by taking the deposit of stock he had

waived his lien; and, consequently, the question between the creditor and vendor was not decided.

It does not appear ever to have been decided. We find no case in which the naked question has been determined against the creditor. Could the case of *Chapman* v. *Tanner* even be stripped of the circumstance that the vendor retained the title papers in his hands, still the assignees of a bankrupt are not understood, in England, to stand in the same situation with a creditor who is secured by a mortgage. In the case of *Mitford* v. *Mitford*, (9 *Ves. jur.*) the Master of the Rolls says, " between a particular assignment for valuable consideration, and an assignment by operation of law, such a distinction has always been made, that the effect of the one is not necessarily to be inferred from that produced by the other." In the same case he says, " I have always understood the assignment from the commissioners, like any other assignment by operation of law, passed his rights precisely in the same plight and condition as he possessed them. Even where a complete legal title vests in them, and there is no notice of any equity affecting it, they take subject to whatever equity the bankrupt was liable to. This shows they are not considered purchasers for a valuable consideration, in the proper sense of the words. Indeed, a distinction has been constantly taken between them and a particular assignee, for a specific consideration; and the former are placed in the same class as voluntary assignees and personal representatives."

Were it then completely settled that the vendor retains his lien against the assignees of a bankrupt, it

would not follow that he would retain it against creditors holding under a *bona fide* conveyance from the vendee. To establish this principle on the authority of adjudged cases, the Court would require cases in which the very point is decided. We have seen no such cases. We have seen no case in which this lien has been supported against a judgment creditor, against a mortgagee, or even against a creditor charging an heir on the bond of his ancestor in which he was bound.

The weight of authority is, we think, the other way. The lien of the vendor, if in the nature of a trust, is a secret trust; and, although to be preferred to any other subsequent equal equity, unconnected with a legal advantage, or equitable advantage which gives a superior claim to the legal estate, will be postponed to a subsequent equal equity connected with such advantage. This principle is laid down in Hargrave and Butler's notes to *Co. Lytt.* 290. *b.*; and the case of *Stanhope* v. *Earl Verney*, decided in Chancery in 1761, is quoted in support of it. That was the case of an equitable mortgage, founded on the deposit of a deed for a term of years to attend the inheritance, with a declaration of the trust. This is a much stronger case. It is an actual conveyance of the legal estate.

In the United States the claims of creditors stand on high ground. There is not perhaps a State in the Union, the laws of which do not make all conveyances not recorded, and all secret trusts, void as to creditors as well as subsequent purchasers without notice. To support the secret lien of the vendor

against a creditor who is a mortgagee, would be to counteract the spirit of these laws.

Decree affirmed with costs.