## THOMAS ROBERTS, et al. *vs.* JAMES M. BROOM, et al.

Can trust money be followed into land upon evidence, as against judgment creditors? Quere.

When the conveyance is to the trustee without noticing the trust, the application of the trust fund should be clearly proved.

APPEAL from the Court of Chancery for Newcastle county.

"Jacob Broom by his will, ordered his executors to sell his real estate, and from the proceeds, together with the balance of his personal estate after payment of debts and specific legacies, to create a fund to be applied and distributed as follows: 1st. To invest so much thereof as the executors should think necessary to yield $600 per annum, to be paid by them to his wife; the residue of the said fund to be applied and distributed as follows: one-seventh to J. M. Broom his son; one-seventh to his daughter Ann Littler, and five-sevenths to trustees, to hold one-seventh for the use of his daughter Hetty W. Lyon, the proceeds to be paid to her separate use during her life; and after her death, to be paid to her children or legal representatives; one-seventh for the use of his daughter Sarah Roberts, the proceeds to be paid in the same manner; one-seventh for the use of John and Rachel Roberts, the children of his deceased daughter Elizabeth, to be paid to them when they severally arrive at age, and in the mean time, the proceeds to be paid to their maintenance and education; one-seventh for the use of his son Jacob P. Broom, the proceeds to be paid to him during his life, and after his death the said one-seventh to be paid to his children or representatives, and the remaining one-seventh for the use of his daughter Livinia R. Broom, to be paid in the same manner.

He constituted the said James M. Broom sole executor and trustee. The testator died in 1810. J. M. Broom took out letters; and, in execution of the will, sold all the real estate so directed to be sold. He passed sundry administration accounts, the last of which is on the 7th May, 1816, and shows a balance in his hands of

$52,925 48; and also a trustee account on the 29th Nov. 1816, showing a balance of $————

The said James M. Broom purchased sundry tracts of land and other real property in Pennsylvania, Delaware, Maryland and Ohio, to a very large amount, and he re-purchased the estate "*Tusculum*" which had been sold under the will of his father to John Lowber, which estate he improved at a considerable expense, for his own residence.    The deeds for all the property were taken to himself without any mention of the trust.

J. M. Broom becoming embarrassed in his circumstances, and there being sundry judgments against him at the suit of defts., on the 31st May, 1826, executed a deed of assignment of all his property in Delaware, Maryland, Ohio or elsewhere, (except in Pennsylvania) to John Lowber, in trust to pay off the said legatees of Jacob Broom, the several sums to which they were entitled under the will afs'd., they executing a release.    This deed recited that certain sums of money came to the hands of the said J. M. Broom, as executor and trustee under the will afs'd. of Jacob Broom "which have not been paid over to the persons entitled to the same, or invested in any separate and distinct investment by him as trustee; but the said J. M. Broom with the said moneys hath purchased sundry parcels of real estate, intending that the same should be holden for the use and security of the persons so entitled to the said moneys." It further recited, that, from the depreciation of real estate "and the loss of rents and inadequacy of the same, to meet the payment of interest received by the said devisees, and made by the said J. M. Broom since the year 1810," and from other causes, he is unable to satisfy the demands of said legatees, but being desirous of doing them all the justice in his power, by appropriating these estates "which were intended for their use and benefit, to the satisfaction of their claims" he therefore made the said assignment.    This assignment was acknowledged before the Mayor of Philadelphia, on the day of its date, (31st May, 1826,) and recorded in Newcastle, Sept. 9, 1826.

The dates of the several judgments claimed by defts. are as follows: Bank of Delaware, judgment entered 31st Oct. 1818, principal, interest and cost $1,824 58.    Jeffries' exr's. judgment entered 18th Oct. 1825; bal. of prin., int. and costs $1,196 94.    Monro's adm'r. judgment entered 1st March, 1821; bal. of prin., int. and costs $929 22.    Bank of W. & Brandywine, two judgments, 3rd June, 1626, and 15th Dec. 1827, for $769 72.

Under these circumstances the complainants', legatees under the will of Jacob Broom, filed their bill for the purpose of securing these estates so purchased as they contend with the trust funds and in the execution of the trusts, which gives them the equitable title to the lands, not to be affected by the debts or incumbrances of the trustee James M. Broom.

The Chancellor decreed, at the June Term, 1831, against the complainants, and directed payment, out of the proceeds of the sales of James M. Broom's real estate, (which had been brought into court) of the afs'd. judgments of defts. respectively against J. M. Broom.

Whereupon, an appeal was prayed and granted.

Mr. *Bayard,* for complt's. applt's.

The lien of *cestui que trust* is good against the trustee and persons claiming under him; and against all persons except purchasers, and quasi purchasers for valuable consideration without notice. As it relates to the trustee, the lien of cestui que trust is apparent wherever the trust fund can be traced; and the mode of tracing it, without express evidence on the deeds, may be by parol evidence or the declarations of the trustee, particularly his declarations in writing. A trust fund traced into other property attaches the lien of the trust on that property, even at law. If a trustee purchase land and take the deeds in his own name, the trust is still good if it can be traced. In equity the land is the land of cestui que trust. Parol evidence may be admitted to establish the trust. *Willes R.* 402; 1 *Salk.* 161; 1 *T. Rep.* 619; 5 *Vezey* 169; 10 *Johns.* 63; *Sugd. Vend.* 454, (427); 3 *Johns.* 216; *Ambler* 409; 1 *Dallas* 193; 2 *Washington* 441; 3 *Binney* 302; 8 *Vezey* 150; 17 *do.* 49. The exceptions are a *mortgagee,* who is a quasi purchaser, and a *purchaser* for valuable consideration without notice, and no others. The rights of the judgment creditor are subject to this equity. It is not a specific pledge of this land, but a general security against the person, property and land. The judgment binds the land generally and not specially; and is subject to the equitable liens of others. It may be objected that this is a secret lien; impolitic and improper, but would it not be more impolitic to unsettle established law, to break into a great system and mar its features. Nor can we readily perceive the ultimate effects of such a deviation from established principles. The moment you establish that a judgment creditor is on the same footing with a mortgagee, it runs into an infinite range of effects which may at some time startle. 1 *Paige Rep.* 125, 283; 1 *P. Wms.* 277-8; 2 *do.* 491. Explains the difference between a judgment creditor and a mortgagee. But even in the case of a purchaser for valuable consideration without notice, it is a mere defence, and not a ground of suit; and a defence to be set up in a very special manner. The deft. to establish a protective equity must show he has been imposed on: he must deny notice on oath, &c. If the circumstances of our people should require a modification of this rule, it would be that the complainant when this lien is set up, should be entitled to make defence, stating that the deft. in the judgment was in possession of the land; that he loaned the money on the credit of the land, and declare on oath that he had no notice of the lien.

Jacob Broom's will gives nearly all his property in trust with privilege to the trustee to invest. The will is matter of public record which the public are bound to take notice of if it affects them. J. M. Broom admits that he bought this land with the trust money for the purposes of the trust: the principle of the cases only requires proof of this fact by the admission of the trustee.

Mr. *Latimer,* for respondents.

There is in all the cases cited, a redeeming feature distinguishing them from the present; the investment of the trust money is fully proved. We contend, 1st. That the purchase of the land in this case with the trust money is not sufficiently proved, and 2nd. That

the length of time will deprive complainants of their remedy, for their own *laches*.

Where there is no direction to lay out trust money in a particular way, no presumption can arise in its favor and much stronger evidence of the investment is required. There is no direction in the will of Jacob Broom, that this money should be invested in land. He directs a conversion of all his lands into money. The only proof we have is the declaration of J. M. Brown in the deed to Lowber, and this is far from being explicit. It is made sixteen years after the testator's death. He had uniformly used the land as his own; occupied and improved Tusculum; always charges himself with money, and when he becomes insolvent, endeavours to secure the legatees to the injury of his creditors. The property claimed exceeds the amount of the trust money. All the heirs paid off but two. Broom made purchases to the amount of $39,000. Complainants have been paid about $3,000, leaving a small balance of $———, for which the whole of this property is said to be held in trust. It is impossible. The mingling of money destroys the trust.

Second. Complainants are barred by their own *laches*. Secret liens are against the policy of the law; and *cestuis que trust* standing by and seeing the rights of others prejudiced by their secret liens become accessaries to the fraud, and cannot in a Court of Equity, set up their lien. He cited 2 *Fonb. Eq.* 119, note *C*; 4 *Vezey* 108, 118; 10 *do.* 511, 516; *Finch Pr.* 88; *Amb.* 413; 2 *S. & Rawle* 521; 2 *Atk.* 72; 10 *Johns* 65; 7 *Wheat.* 56-7; 2 *Wash. R.* 441.

Mr. *Wales*, for respondents.

The extent to which the doctrine is contended for is new and dangerous—new as regards the English law; more objectionable here. It is not pretended that these judgments were taken with notice of the trust. They bind all the lands of J. M. Broom. They are entitled to sell all the estate of J. M. Broom in the land, and however the question might be as between purchasers, and those claiming to have the equitable title, the bill is misconceived as against judgment creditors. If a decree was had against the purchasers, they would havs no remedy against the judgment creditors, to recover back the purchase money. But as to the trust. It must arise from the will of Jacob Broom; or from the declaration of trust; or by operation of law. The will does not direct such an investment; the fair inference is the contrary. The recital in the deed to Lowber does not amount to a declaration of trust; and, if it did, it is contradicted by the evidence. The very conveyance in that deed is upon terms which shows that it was not considered trust property. But the acts of J. M. Broom in relation to this property, and his charging himself with the money, payment of interest, &c., are conclusive. Neither can the trust arise from operation of law, for this cannot be except where the identical money is traced, and in no case where the lien of another is affected. The question is always between trustee and cestui que trust. *Willes* 402; 1 *Salk.* 161; 5 *Vezey* 169; 10 *Johns.* 63.

With regard to the policy of this doctrine here; it is against the whole spirit of our laws. Credit here is always given on the possession of land; and a doctrine giving effect to secret and invisible

liens, would spread consternation in the community. Our defeazance laws; stat. frauds, &c., make careful provision against them.

Mr. *Read, Jr.,* for respondents.

Denies the trust. Every confidence is not a trust. An executor is not a trustee. To make a trust both the object must be declared and the instrument named. J. M. Broom has made no declaration of this trust. He purchased land very extensively; no distinction in his purchases—and who can say what land was bought with this money. But suppose he had made a full declaration of trust, would it be evidence as against judgment creditors. Surely not. No principle of evidence better settled. The admission is evidence as between the trustee and cestui que trust, but not as against third persons.

Complainants are barred by their laches. The law is for the vigilant, and not for the sleeping; and their claim is tainted with fraud. There has been a delay of sixteen years.

There is a strict resemblance between the estate *Segely* in the case in *Washington's Rep.* and *Tusculum* in this case. *Amb.* 633; 10 *Vezey* 511; 2 *Wash. Rep.* 441.

Mr. *Rogers,* for appellants in reply.

To Mr. Wales' first point. That this question is between cestui que trust and purchasers of the land, and not between them and judgment creditors. This bill was filed against the judgment creditors *before* the sale, which was made under the order of court, and the proceeds are in court.

Second. I assume it as a principle admitted, that trust lands are not subject to the debts of the trustee; and that trust money invested in land, gives the equitable title to cestui que trust, not to be affected by the debts of the trustee. I concede that as it regards the tracing of the money, it lies on us to prove the investment. But as to the evidence, the cases cited furnish no general rule.

It appears from the declaration of J. M. Broom, that this land was purchased with trust money. Can there be any doubt that this evidence is good between him and the complainants; and does it make any difference as it regards third persons. Is it evidence against judgment creditors? All their demands on this fund are deduced through J. M. Broom, and is not evidence against him equally evidence against all persons who derive their interest through him?

*Cur. adv. vult.*

June Term, 1833.

HARRINGTON, J., delivered the opinion of the court.

After stating the case *ut ante.*

"It has been long established in England, that upon sufficient proof of trust money having been laid out in the purchase of land, a trust would result to those entitled to the money; and the later cases establish that the fact of such purchase may be proved by parol evidence. *Sugd.* 455. Much greater strictness was formerly required in the proof of the application of the trust money to the specific purchase. It is still held, that when the conveyance is taken in the name of the trustee without the trust appearing on the face of the deeds, the estate will not be liable to the trusts unless the application of the purchase money can be *clearly* proved. *Sugd.* 427.

Upon a review of the cases, it will appear that the doubt has been rather upon the proof than as to the application of principles of equity. In some cases the court has resorted to implications in support of the lien arising from the inability of the trustee to purchase with his own funds, and from his being under an obligation to make such an investment of the trust money. On the other hand it has been held, that where the trustee was not under an obligation to make the specific investment, or where he considered himself entitled to the trust money, no presumption could be raised, in opposition to this fact, that he intended any lands he may have bought with the trust money, to be subject to the trust.

In *Perry* vs. *Philips*, 4 *Vezey* 117, the Lord Chancellor *(Lough-borough,)* says 'I can find no case, no authority or principle, that enables me where there is not a ground of presumption, where in point of fact I must be satisfied the party did not mean to execute the trust, or conceive himself to be under a trust, to hold that the estate he purchased is subject to the trust.'

And *Fonblanque (Fonb. Eq.* 120,) in remarking on this opinion says 'That from this observation of Lord Loughborough, it may be collected that in his lordship's opinion, it is not only necessary that the trustee be under an obligation to purchase land, but that he be apprised of such obligation, and that nothing appears to rebut the presumption of his intention to discharge it.'

In investigating the fact of the purchase of these lands by James M. Broom the trustee, with the trust money, and for the purposes of the trust, the first remark upon the evidence, suggested by the principle of the cases referred to, is, that he was under no obligation to invest this trust money in the purchase of land; and that he was perfectly competent from other sources, to buy these lands for his own use. The will of Jacob Broom so far from directing the proceeds of his property to be invested in real estate, orders all his real estate to be converted into money, to create a fund to be applied and distributed according to the directions of his will: and that part of this fund bequeathed to complainants, is directed to be paid 'to trustees *to hold*' for the use of complainants in specified proportions 'the proceeds thereof to be paid to them' as directed by the said will. And that it was so *held* by James M. Broom, without reference to any specific investment in real estate, appears from his administration and trustee accounts charging himself with the money; and from the payment of interest to the legatees which he alledges in the deed of assignment to Lowber, to have been a principal cause of his embarrassment. There is, therefore, from these facts, no ground of presumption that Broom conceived himself to be under an obligation in the execution of his trust, to invest this money in land, nor that in the purchase of this property, his object and intention were to discharge such obligation. And, connected with the fact of the conveyance being taken in his name without any mention of the trust, it is a case where the complainants will be held to *strict proof* of the application of the purchase money.

What is the proof relied on? It consists in the declaration of trust made by J. M. Broom, in the deed of assignment to Lowber. Jacob Broom the testator, died in 1810. From that time until the

date of this assignment in 1826, James M. Broom purchased and held a large real estate in Pennsylvania, Delaware, Maryland and Ohio, far exceeding the amount of money due from him to the complainants. The conveyances were all made to him personally without any mention of a trust; and he occupied, improved, sold, mortgaged and otherwise charged them with his own responsibilities as his own property. He held himself out to the world as the proprietor; and upon the general security of these lands he obtained credit. At the same time, he treated his liability to complainants as a *debt* due from him to them *personally*, not charged upon or invested in any particular portion of his estate. In his trustee account he charged himself with money; he received the rents and profits of the lands as his own, and, though these were inadequate, as he alledges, to keep down the interest of the sum due the legatees under his father's will, he still considered himself liable to the amount of that interest. Under these circumstances, being embarrassed by this debt and by judgments and mortgages standing against him at the suit of respondents, he executed a deed in 1826, to John Lowber, conveying him all his land in Delaware, Maryland, Ohio or elsewhere, except in Pennsylvania, in trust to pay off these legacies to such of the legatees as should execute a release. The recital to this deed contains the declaration of trust upon which it is designed to establish that these lands were bought with the trust money in execution of the trust, and that the equitable title thereto, had always been in the *cestuis que trust* and not in Broom. This deed recites that certain sums of money had come to the hands of J. M. Broom as executor and trustee under the will of his father 'which have not been paid over to the persons entitled to the same *or invested in any separate and distinct investment by him as trustee;* but that the said J. M. Broom with the said moneys, hath purchased sundry parcels of real estate, intending that the same should be holden for the use and security of the persons so entitled to the said moneys.' This declaration, if disconnected from the facts in the cause could not be considered as very unequivocal: it sets out with the distinct avowal that the money had not been invested in any separate and distinct investment by him as trustee. But considered in connection with the evidence it amounts to nothing more than this, that Mr. Broom being indebted to certain legatees, holding in his hands a fund which he was directed by the will of his father to hold and to pay over the proceeds to the legatees, made frequent purchases of lands and real estate without any reference to his trust, but which he regarded with all the rest of his property, as a *security* for the debt due to these legatees. The idea of an investment of their money in real estate for their *use* so as to give them a title to the land is totally inconsistent with all his conduct in relation to the land that he purchased and held. The expensive improvements of Tusculum made by Mr. Broom, and his mortgage of the Hazlitt farm to Mrs. Delaplaine, conclusively show that this idea of their being trust estates, had its origin at a period long subsequent, perhaps at the time when in the deed of assignment to Lowber, he declares, that having become embarrassed by the payment of interest to these legatees, he is desirous of *'appropriating'* these estates to the payment of their claim.

From this view of the case we cannot say that the investment of this trust money in these lands has been proved either clearly or satisfactorily to us so as to induce us to recognize an equitable lien of these legatees upon the land discharged from the claims of the judgment creditors: and we design to rest our judgment on this ground without deciding several other questions of importance raised in this cause, particularly that which relates to the application of this general doctrine of the equitable lien of cestui que trust as established in England to our own country.   In *Bailey* vs. *Greenleaf et al. (7 Wheat.* 57.*) Ch. Jus. Marshall* says 'In the United States the claims of creditors stand on high ground.   There is not perhaps a state in the union the laws of which do not make all conveyances not recorded and all secret trusts void as to creditors as well as subsequent purchasers without notice.'   On this occasion, however, we waive a decision of the general question which is unnecessary as the proof does not satisfy us of the investment; and we are all of opinion that the decree of the Court of Chancery ought to be affirmed.

(Note.)   It was contended in the argument that the decree was erroneous, so far as regarded the proceeds of sale of the house in Wilmington, bought by Mr. Wales, because it was sold as the property of Jacob Broom, and was never the property of J. M. Broom either as trustee or otherwise.   The same objection was made in relation to two tracts sold to the Morrissons, one for $155: and the other for $425: and also a piece of marsh sold to J. Wales for $200. It was also contended that the decree could not embrace the whole proceeds of the Bohemia Manor farm, as a part thereof, about forty acres, is in Maryland, and not bound by these judgments.   The same objection was made to the decree so far as it applies the proceeds of the Logue farm to these judgments.   This farm lies altogether in Maryland, and sold for $305.   The only evidence in the cause in relation to the lot bought by J. Morrison, and the tract bought by T. Morrison is furnished by the complainant's bill which sets forth these tracts as a part of the land bought by James M. Broom with the trust funds.   There is therefore no reason for excepting these particular tracts from the operation of the decree. The proceeds of the sales of the other property, exclusive of the house in Wilmington sold to Mr. Wales, and also exclusive of the Logue farm in Maryland, and of that part of the Bohemia Manor farm that lies in Maryland, are amply sufficient to cover the amount ordered by the decree to be paid to the judgment creditors, and leave a large sum unappropriated.   Without inquiring then whether the creditors are entitled to the proceeds of this property, there being a sufficient fund for the payment of their claims without it, the decree must stand.

The sales of the property were as follows:

| | |
|---|---|
| The Clement's creek marsh sold to Mr. Wales for | $200 |
| "    Stable lot to J. Morrisson for | 155 |
| "    Grave yard lot to Lowber for | 100 |
| "    Woodland on Kennet road to J. Martin for | 650 |
| "    Holland's creek marsh to J. Morrison for | 425 |
| The Oldham farm on the manor, 450 a., (40 a. in Maryland,) sold to Smith for $1900; deduct $200 for the 40 a. in Maryland | 1700 |

Tusculum sold by the shff. to Doct. Martin for $5700; and the Hazlitt farm sold to Higgins for $3035;— . These tracts were sold on Tatnall's judgment, and Delaplaine's mortgage, and the sheriff paid into Court (after deducting these claims, as I suppose) this balance

|  |  |
|---|---|
| | 5030 |
| | 8260 |

House in Wilmington sold to Wales, which complainants contend is not bound by the judgments vs. J. M. Broom  3250

Logue farm, in Maryland, sold to Wales for  305

|  |  |
|---|---|
| | $11,815 |

Sums ordered to be paid by the Decree:

| | | |
|---|---|---|
| Bank of Delaware | $1824 | 58 |
| Executors of Jeffries | 1196 | 94 |
| Administrators of Monro | 929 | 22 |
| Bank of Wilmington and Brandywine | 769 | 71 |
| | 4,720 | 45 |

Surplus of sales    $7,094 55

Or $3,539 55, exclusive of the house in Wilmington; the Logue farm and part of the Bohemia Manor farm.

Decree affirmed with costs.

*J. A. Bayard* and *Rogers* for appellants.

*Latimer, Wales* and *Reed, Jr.* for judg't. creditors.