## Briggs *et al.* Appellants, *v.* Hill.

The vendor's lien for the purchase money of land does not pass to his assignee of the note given for the payment of such purchase money.

APPEAL from the court of chancery.

Briggs, Lacoste & Co. filed their bill in chancery against W. J. Hill, charging, that on the 15th of November, 1836, one J. A. Brooks sold and conveyed to Hill a tract of land in Yazoo county, and took Hill's promissory note for the purchase money without any other security than the vendor's lien on the land sold; that Brooks indorsed the note, and the same was also indorsed by one P. Buford, and in the due and regular course of trade, the note fell into the hands of Briggs, Lacoste & Co., and remains unpaid; that the complainants sued Hill, at law, and recovered judgment and issued execution, but obtained no satisfaction; that the only estate remaining subject to said execution is the tract of land for which the note was given, and that there are judgments of older date than the complainants against Hill; and the bill prays that the land may be made subject to the payment of the purchase money.

Hill was sued as a non-resident, and after publication made, a decree pro confesso was taken, but was subsequently set aside and the bill dismissed by the chancellor. From which decree this appeal is taken.

There are no other parties to the suit, and the record presented but one point for consideration—whether the vendor's lien passes to his assignee by the transfer of a promissory note executed for the purchase money of land.

Wilkinson and Miles, for appellants.

The record, critically examined, presents but one point, to wit: does the vendor's lien pass to his assignee, by the transfer of a promissory note executed for the purchase money of land?

Briggs *et al*. Appellants, *v.* Hill.

It is believed to be the well settled doctrine of the courts of equity, that the assignee of a chose in action takes it subject to all the equities in the hands of the assignor.    See 2 Vernon, 691, 764; 1 P. Wms. 496; 1 Vesey, 123; 1 Vesey, jr. 249; 2 Johns. Chan. Rep. 443.    If then the vendor holds an equitable lien on land for its unpaid purchase money, does not his assignee take the same equity in the transfer to him of a promissory note given for its purchase money?

In the absence of all directly adjudged precedents, it would seem to us that this question is settled by the analogies of the law.    It has never been doubted that the assignment of a promissory note secured by trust deed or mortgage, carried with it the trust deed or mortgage as an incident to the debt.    See 1 J. R. 590; 4 J. R. 43; 5 Cow. Rep. 202; 5 Wend. R. 615.    Then on what principle can it be contended that the assignment of a promissory note given for the purchase money of land does not carry with it the vendor's lien as an incident to the debt?    The mortgage or trust deed is not part or parcel of the debt; neither is the vendor's lien.    They are but *securities* for the payment of the debt; and the only difference between them is, that the one is matter of *contract*, while the other is raised by *implication* of law.

But this cause has been decidedly the settled law of repeated adjudications.    It has been held in Kentucky, Tennessee, and Virginia, and we might say New York, that the vendor's lien does pass to his *assignee* by a transfer of the promissory note given for the purchase money of land.    See 4 Little's Rep. 290; 3 J. J. Mars. Rep. 42; 5 Monroe's Rep. 825; 2 Dana's Rep. 98–99; 2 Yerger's Rep. 84; 1 Tucker's Commentaries, 337, old ed.; 1 Paige's Chan. Rep. 506, et seq.

It has even been held in Virginia that the surety of the vendee may be subrogated to the vendor's lien.    See 2 Rand. Rep. 430, which is certainly a much stronger case than the one at bar; for it would require strong logic to prove, that the surety of the vendee might be substituted to the vendor's lien, and at the same time deny the assignee of the note given for the purchase money the rights to enforce it.

The question in this case cannot be affected by the fact, that the note was indorsed when it came into the hands of the complain-

ants in the bill in the court below, now the appellant, because these indorsements were not a *part* of the original contracts for the purchase of the land. See 2 Story's Eq. 462, et seq. Neither does the existence of older judgments against Hill in favor of other creditors, interfere with appellants; for although where the equities of parties are equal, the law will prevail, yet, where the equities of parties are vastly disproportioned, as in this case, and where the law is so nearly equal, the court will give relief to him in whose favor the equity preponderates. In addition to which, it is contended that the allegations in the bill make out a case covered completely by the rule laid down in the case cited from 1 Paige.

Mr. Justice TURNER delivered the opinion of the court.

It is believed that this question has never been directly decided by this court, or by the old supreme court of the state.

That the vendor has this lien for the purchase money, is admitted on all hands in England, and in most of the American courts; and the point has been expressly so decided many years ago in this state; and there has been no decision, within my knowledge, to the contrary. This is the general rule, subject to exceptions.

In the case of Mackreth *v.* Symmons, reported in 15 Vesey, 329 to 355, Lord Chancellor Eldon sums up all the authorities, from the case reported in Cary, 25, Hearn *v.* Batelers, down to the year 1808; and Chancellor Bland in his reports, p. 519; and Judge Bibb, in 5 Monroe, 299; and Ch. Justice Marshall, in 7 Wheaton, 49, do the same.

Lord Eldon says, that, "from all these authorities, the inference is, first, that, generally speaking, there is such a lien, (as between vendor and vendee;) secondly, that in these general cases in which there would be the lien, as between vendor and vendee, the vendor will have the lien against a third person, who had notice that the money was not paid. Those two points seem to be clearly settled. I do not hesitate to say, that, if I had found no authority that a lien would attach upon a third person, having notice, I should have no difficulty in deciding *that*, upon principle; as I cannot perceive the difference between this species of lien, and other equities, by which third persons having equities are bound.

Such we consider to be the general rule; but it is distinctly said

that each case must depend on its own circumstances. We are considering the case of *implied* liens—liens which are mere creatures of equity—and not express liens, such as mortgages, retention of title deeds, bonds for titles when the purchase money is not paid, retention of the possession of the land, &c.

Various reasons are assigned in favor of implied liens on the land sold for the purchase money. By some it is contended that until the consideration money is paid, and no separate and independent security taken therefor, the vendee holds the land as a trustee for the vendor; by others, that the giving of a note, bond, or bill of exchange, for the purchase money, the lien is not waived; and by others, such securities have been construed to be a waiver or extinguishment of the lien which would otherwise exist; and at some times it has been thought that this equitable lien is at war with the provisions of the statute of frauds, which declares all contracts not reduced to writing, for the sale or transfer of land, void. 2 Madd. Ch. 130; 15 Ves. 329.

Under these doubts and difficulties, which have been so often expressed by the most distinguished jurists, judges and chancellors, it becomes us to be cautious when called on to extend the rule in favor of third persons.

It is contended by the complainants' counsel that, inasmuch as the assignment of a promissory note, secured by trust deed or mortgage, carries with it the trust deed or mortgage, as an incident to the debt, that, by analogy, such an assignment will carry with it the assignor's or vendor's equitable lien.

See what Chancellor Bland, of Maryland, Bland's Ch. Rep. 524, says on this subject:

"It is true, as a general rule, that the principal carries with it all its incidents, but not the reverse; and therefore, if the debt be in any manner distinctly and legally assigned, the assignment carries with it the bond, note or mortgage as its incident; because the transfer of the money carries with it the mortgage interest in the land, and all other securities which were given for the purpose of assuring its payment. This may be done by parol, notwithstanding the statute of frauds. So, too, if it be the intent of the mortgagee to give the debt only, he may do so by a will not attested by three witnesses; and the legatee may, in the name of the heir,

obtain, in equity, all the benefit of the mortgage; but if his intention was to devise it as land, then his will must be duly attested for that purpose.   The reason of this is, that a gift, assignment or bequest of the principal, carries with it all its beneficial incidents. But an equitable lien is an incumbrance upon land, which can only be held by a vendor; and although assets may be marshalled, so as to put a vendor altogether upon his equitable lien, for the benefit of other creditors, yet no third person can, as assignee of the vendor, derive any benefit from such lien, nor can it, like a bond or mortgage, be assigned—because it is not expressed in writing, or in any separate contract, but exists only as an inseparable equitable incident of the contract of purchase, and is raised by construction of equity in favor of the vendor only.   To allow it to pass, by an assignment of the claim for the purchase money, or by a transfer of the bonds or notes given as a security for the payment of the purchase money, would be of the most ruinous consequences to titles to real estates.   It would completely break down the statute of frauds, and all the acts of assembly requiring conveyances of lands to be recorded, &c.   A common bond, or a mere promissory note, passing with a blank indorsement from hand to hand, might carry with it an incumbrance upon a real estate of the most binding and extensive nature.   Besides, if such assignable or negotiable instruments were permitted to carry with them any such equitable lien, aliens and others, incapable of directly taking any such estate, might thus acquire and hold a much larger interest in land than is allowed by our law.   This certainly ought not to be permitted; and there is no authority sanctioning any such principle.

"But where there has been a bond or promissory note given for the payment of the purchase money, which does not impair the equitable lien, the assignment of such security must operate as a tacit relinquishment of the equitable lien—because the assignee and vendee are thereby placed in the relationship of creditor and debtor; and the vendor having thus finally waived the right to enforce his equitable lien, it can never again be revived in his favor, unless his privilege as vendor has been kept up and continued by the holding of him answerable as assignor of the securities given for the payment of the purchase money."

And the chancellor goes on to state that it is admitted that no adjudged case can be found in the English books to sustain the position that an equitable lien may be assigned, or that it virtually passes along with the assignment of the bond given for the payment of the purchase money.

And in the case of White *v.* Williams, reported in 1 Paige's Ch. Rep. 506, Chancellor Walworth holds similar language and doctrine.

In a more recent case, where the vendor had negotiated the note, but was obliged to take it up himself when it fell due, Lord Eldon sustained the claim of the original vendor to a lien on the land.    Exparte Loaning, 2 Rose's Cases, 79.    But, says Chancellor Walworth, "I am not aware of any case where the assignee of the note or other security has been permitted to sustain such a claim on an implied agreement to assign the lien."

It seems to be admitted, then, that the vendor, if he takes up the assigned note, may maintain his original lien, and that his indorsee by joining his name in a suit in equity, might enforce the lien. Paige's Ch. Rep. 505.

Such are the decisions, and the principles laid down in England, New York, and Maryland.

But the Virginia, and Kentucky and Tennessee authorities are relied on; and although they are highly respectable authority, we think they contain evidence of departure from sound legal rules, and the decisions of the courts of the country, from which they derived their authority.

In one of the earliest cases of which we have any evidence in Virginia, chancellor Wythe dismissed a bill filed by the vendor of land to enforce his equitable lien.    In this opinion he was sustained by at least one respectable authority in England; Farvell *v.* Holis, Ambler; 6 Ves. Jun. 752.    But the court of appeals reversed the chancellor's decree, and established or rather recognized the rule as it exists in modern times in England, viz. that a vendor of land, not having conveyed the same, or taken security for the purchase money, has a lien upon the land for the payment or satisfaction thereof.    See the case of Cole *v.* Scott, decided in 1795, reported in 2 Washington, 141; and the case of Blackburn *v.* Gregson, in 1 Bro. C. C., 420, is relied on; and two manuscript decisions for-

merly decided in Virginia. It will be perceived that at that time there was some doubts in that state about this matter, and their courts proceeded with caution and circumspection in carrying out, or extending the old English doctrine. But in Kentucky, their courts by repeated decisions have recognized this equitable lien, and extended it to the assignee of the note or bond taken for the purchase money. Judge Bibb, however, when on the bench of the court of appeals, dissented, and endeavored to bring back the court to the true law and best decisions on the subject; see 5 Monroe, 299. Judge Bibb, now filling with great reputation the office of chancellor for the Louisville district, summed up, in his very able opinion, all the English cases, and commented on those cases relied on by the majority of the court. In my judgment, his views of the law were correct throughout; and, in that very case, the vendor, as well as his assignee, was a party to the suit.

The case in 2 Yerger, 84, cited to show the decisions of the Tennessee courts, does not warrant the inferences attempted to be drawn from it. In that case, there was an indorsement on the face of the bond, immediately below the seal of the obligor, that the land should be liable for the debt until paid. Judge Haywood in delivering the opinion of the court, recognizes the English doctrine; and as to the rights of the assignee of the security, he remarks that " an *equitable mortgage* may be transferred by the mortgagee into the hands of an assignee, as well as a *legal one; and here* is an *equitable mortgage. One of us* cannot see why, as the lien implied goes with the land to sub-purchasers with notice, it should not also pass beneficially from the vendor to his assignee. A mortgage will do so: why not a simple lien raised by equity for the same purpose?" &c. &c. going on with his queries. But, it was evident that Judge White did not concur with him; and the case did not admit of such a decision. What fell from the distinguished judge, was rather a speculation, than even an opinion; and the point had not been discussed. It was not necessary in that case to discuss, or to decide it, inasmuch as the court were of opinion that the memorandum on the bond, amounted to an *equitable mortgage.* There is a manifest difference between an equitable mortgage and an implied lien.

Briggs, *et al.* Appellant, *v.* Hill.

We deem it unnecessary to look into the other states of this Union for evidence of the law. I will, however, refer to the case of Brown *v.* Gilman, reported in 4 Wheat. 256, in which Ch. Justice Marshall lays down these principles, to wit: that the equitable lien of the vendor of land, for unpaid purchase money, is waived, by any act of the parties, showing that the lien is not intended to be retained, as by taking separate securities for the purchase money; that an express contract that the lien shall be retained to a specific extent, is equivalent to a waiver of the lien to any greater extent: that where the deed itself remains an escrow until the first payment is made, and is then delivered as the deed of the party, and the vendor consents to rely on the negotiable notes of the purchaser, indorsed by third persons for the residue of the purchase money, this is such a separate security as extinguishes the lien. And the chief justice remarks, (p. 290,) that "even admitting the law of England respecting the lien of vendors for the purchase money, after the execution of a deed, to be the law of Georgia, a *point which we do not mean to decide*," &c. thereby clearly showing, that, in his mind there was at least a doubt, whether the delivery of a deed by the vendor to the vendee, was not of itself a waiver of the lien; and, in the case of Bayley *v.* Greenleaf, reported in 7 Wheat. 46. The same distinguished judge goes fully into the subject, as between vendor and vendee and subsequent purchasers and creditors, and reviews the cases in England and America, and seems by no means inclined to extend the doctrine of implied liens, from the great danger to the general interests of the community in buying and selling real estate, the temptation to perjury, &c. If a person who sells real estate on a credit, desires and intends to retain a lien on the land sold for the purchase money, the most obvious manner of doing so, is to withhold the title, or to take a mortgage, or other written evidence of the intended lien; and, by omitting to do so, it is rather to be presumed, that no such intention exists, but that it is an afterthought; and the conscience of the chancellor is invoked, on principles of equity, to supply the means of doing for the vendor, what he should have done for himself when parting with his property, and with the highest evidence thereof, his own deed, signed, sealed, delivered and recorded.

Briggs, *et al.* Appellant, *v.* Hill.

Upon full consideration of the principles involved in this case, we think our highly respectable chancellor did not err in recognizing the doctrine as laid down by chancellors Bibb, Bland and Walwork; they all concur in opinion, that an implied equity, even if the subject of transfer, of bargain and sale, cannot be assigned by implication.

Decree of the chancellor affirmed.