SNEED, J.,
delivered the opinion of the court.
The controversy is between the vendor of land who has sold and conveyed without an express reservation of the lien, and who seeks by this bill to as *7 sert his lien for purchase money unpaid, and the purchaser at a trust sale, under the trust deed of the Vendee, made and foreclosed before the filing of the bill. The complainant bargained and sold the land by title' bond on the 7th of February, 1854, and on the 9th of January, 1856, conveyed the land by deed, reciting the payment of $1,200, the full price and considera-toin, when, as matter of fact, the sum of $177.05 was still due and unpaid as part of the purchase money. This indebtedness was evidenced by a note under seal, due at one day, and dated the 7th of February, 1854.
The complainant brings his bill to charge the land with the payment of this sum, and his vendee and the purchaser, under the vendee’s trust sale, are made parties defendant. It appears from the bill that the complainant’s deed of conveyance to the vendee was duly registered on the 23d of January, 1856, and that said vendee being indebted in the sum of $1,223.50 to the defendant, Inman, did on the 12th of December, 1861, convey the land . in trust to secure said debt; that the trustee sold the land on the 2d of November, 1868, and that the defendant, Inman, became the purchaser at the sum of $500, and after-wards advanced his bid to the sum of $1,757.61, the amount of his debt at the time of the sale. The bill was filed on the 16th of December next thereafter. It charges that the complainant’s vendee was then in possession of the land; that he had always recognized the complainant’s lien for the balance of the purchase money unpaid, and that at the time of the execution of said deed of trust the said defendant, *8 Inman, had full information and knowledge that all of ■ the purchase money had not been paid, but that since said trust sale and purchase the said defendant, In-man, claimed said land as unencumbered by complainant’s lien. There was a demurrer to the bill which was allowed by the Chancellor, and the bill was dismissed. The complainant brings the cause into this court by writ of error.
The question mainly pressed in argument here is, whether the vendor of land who has without reservation conveyed the legal title, has a specific lien for unpaid purchase money, by virtue of the naked relation of vendor and vendee, without more, or a mere equity or right to create a specific lien by taking the lawful and appropriate steps to enforce it. The solution of this question, not a new one in this court, must determine the equities of these parties. It is a well recognized doctrine of our law that the vendor of land who only conveys by title bond reserves a specific lien, the creation of a court of equity, upon the land for the unpaid purchase money; for in this case the legal title is in him, and only the equitable title in the vendee, who may perfect it into a legal one by the payment of the price. The vendor’s interest in the land is in such case but an unwritten mortgage, an equitable trust that attaches to the land, which, though originally the creation of a court of equity, has come now to be a statutory right. Vide Code of Tennessee, ss. 3563, 3564. It is a well established doctrine of a court of equity also, that the vendor who has conveyed the title may come into a *9 court of equity and have a decree for the sale of the land to discharge the price, or any part thereof which may yet be due to him. And this is so as against the vendee or his heirs, or volunteers, or purchasers under him, who took the land with full notice of the price unpaid.
The complainant in this case had parted with the legal title, and the public had been advised of its transfer to the vendee by the registration of the deed. The vendee had built a credit, upon it, and had contracted a debt perhaps upon the faith of it to an amount exceeding the original price of the land. The creditor, it is admitted by the demurrer, was informed of the fact that a balance of the purchase money had been many years due and was unpaid. To secure and indemnify himself, he accepts the security of a conveyance of the land in trust for his benefit, thereby acquiring for himself a specific lien, and actually becomes the purchaser of the land at the full amount of his debt, and holds and claims under his purchase before the original vendor has taken the first necessary step to assert his equity in the land. Without reference to the doctrines of the law which must determine this controversy, and looking alone to the status of these parties and the history of these transactions, it would not be an ungracious or difficult task in a court of equity to adjust the rights of these parties. And a case could not be easily conceived which so well illustrates the value and wisdom of the principles which govern this case.
It may be observed that the doctrine that the *10 vendor of land who has parted with the title may charge the land with unpaid purchase money, even as against creditors, is not of universal acceptance in this country. A secret trust, which is at once the mantle and the indication of fraud, is not, and should not be, a favorite in the law. If there be some special magic in a mere obligation to pay money for land where the vendor has divested himself of the title — which creates an equity in behalf of the vendor against the land itself — there can surely no sound reason be given why this equity should overreach all others, though founded in equal justice, and originating, perhaps, in the very faith and credit which property in the land has imparted to the vendee.
It would seem, on the other hand, to be the sounder principle that in a race of diligence that equity is to be preferred which first asserts itself.
We can not too highly commend some observations upon this subject by Chief Justice Marshall. To the world, says the Chief Justice, the vendee appears to hold the estate divested of every trust whatever; the credit is given to him in the confidence that the property is his own in equity as well as at law. A vendor relying upon this lien ought to reduce it to a mortgage so as to give notice of it to the world. If he does not, he is, in some degree, accessory to the fraud committed on the public by an act which exhibits the vendee as the complete owner of an estate on which he claims a secret lien. It would seem inconsistent with the principles of equity, and with the general spirit of our laws, that such a lien should *11 be set up in a court of chancery to the exclusion of bona fide creditors. The lien of a vendor, if in the nature of a trust, is a secret trust; and although to be preferred to any other subsequent equal equity unconnected- with a legal advantage, or equitable advantage, which gives a superior claim to the legal estate, will be postponed to a subsequent equal equity with such advantage: Bayley v. Greenleaf, 7 Wheat., 46. Of this case Judge Catron said, in Gann v. Chester, 5 Yerg., 205: “This decision meets the most decided and unanimous approbation of this court.”
This character of lien is rejected entirely by the courts of North Carolina, and even during the early period while it was recognized there, it was held subordinate to the rights of judgment creditors and purchasers at their sale: 1 Dev. & Batt., 32. “If a vendor claiming such a lien,” said Judge Gastoh, “will not reduce it to a legal form, and give it the notoriety of registration which our laws require for the validity of legal liens, it can not prevail against creditors.” Id. In Mississippi it has been held that it can not prevail against creditors claiming under a deed of trust made for their benefit, or under a mortgage, for they have more than an equity or lien; they have the legal title: Dunlap v. Barnett et al., 5 Sm. & Marsh., 702. And so in this State it is held that the lien will not be sustained against judgment creditors or purchasers at their sale: Roberts v. Rose, 2 Hum., 145. It has been correctly said , that “ the neglect of the courts to distinguish carefully between the implied equity where the title has been absolutely *12 conveyed and the lien existing where the title is retained by the vendor and only a title bond has been given to the purchaser, has produced much confusion and conflict of opinion upon this subject. See Anthony v. Smith, 9 Hum., 508. We think the true doctrine is thus stated by a learned writer upon this subject: “It is not a lien until a bill has been filed to assert it; before that is done, it is a mere equity or capacity to acquire a lien and to have a satisfaction of it. When a bill is filed, it becomes a specific lien. In such cases the dispute is between the vendor on the one hand, and the vendee and his representatives on the other. But when subsequent lien creditors intervene the contest is no longer between the vendor and the vendee; it is between third persons contending for his estate. Lien creditors will supplant one, who, though he had a right in equity to charge the land through his own laches and default, failed to secure a lien. The principle is then,” continued the learned author, “that the vendor’s equity, though 'prevailing against the vendee and all claiming through him, is subordinate to the rights of subsequent lien creditors with or without notice. It then only remains to determine who are lien creditors. Judgment creditors, mortgagees with or without notice, creditors receiving a conveyance to themselves, of course are.
“In the case of a voluntary assignment to a trustee for the benefit of creditors, the difficulty is to determine when the creditors become lien creditors by the assignment. They must in some way have elected to *13 take under the deed. • Thus if the creditors have filed a bill to have the trust under the assignment executed, or have otherwise made themselves parties to the assignment by claiming or receiving a benefit under it, they would prevail over the tardy claim of the vendor:” 1 Lead. Cas. Eq., 384, Trotter v. Erwin, 27 Miss., 772; Gilman v. Brown, per Story J., 1 Mason, 102. This court, in two well-considered opinions, have followed this doctrine. It has been suggested at the bar that the opinion of the court to this effect in the case of Green v. Demoss, 10 Hum., 371, was a mere dictum of the Judge delivering it; but we apprehend it will be seen that this precise question was involved in that case, as well as in that of Ellis, ex’r, v. Temple, 4 Col., 315, subsequently decided. It is true that in the first named case the trustee in his answer insists that he occupies the position of a bona fide purchaser of the land for a valuable consideration and without notice of the complainant’s equity. But it seems that the case was heard on its merits by the Chancellor, and a decree rendered in favor of complainants. This court reversed that decree and dismissed the bill. The learned Judge says: “In answer to the second question raised in the case, we think it clear upon principle and weight of authority, that although the equity of the vendor will be sustained against the vendee, and all claiming through or in privity with him, and likewise against volunteers and purchasers with notice, yet it can not be allowed to prevail against creditors of the vendee who have subsequently acquired a lien upon *14 the estate, whether with or without notice, either by judgment or in any other mode, before a bill has been filed by the vendor to assert his lien. The equity, though it relates to the date of the conveyance, does not acquire the character or effect of a specific lien upon the property until the filing of a bill to enforce it. Hence, as between the vendor and subsequent lien creditors of the vendee, it becomes essentially a question of priority of lien, irrespective of notice and all other considerations:” Green v. Demoss, 10 Hum., 374. And to this effect is the case of Ellis, ex’r, v. Temple, 4 Col., 319.
The case of Brown v. Vanlier, 7 Hum., 239, relied upon by the counsel for complainant, does not sustain him as applied to the case now before us. That case was argued by one of the members of this court. The only question involved was, whether a vendor of land, when the purchase money has not been paid, can enforce his lien therefor against a trustee and cestui que trust when the land has been conveyed to secure debts, when the bill is filed for that purpose before the trust is executed? And this question was decided affirmatively, and we think rather gives strength to the theory of this opinion, that the vendor’s right in such case is a mere equity — that other equities of equal dignity may attach upon the land which may or may not overreach it — depending alone upon the result of the race of diligence, which is open to all the parties. It will be observed in that case, that the argument ot one of the eminent counsel for- the complainant was adopted in totidem verbis as *15 the opinion of the court. It will be seen that the argument- admits that to give efficacy to this equity •of the vendor as against creditors under a trust conveyance, the vendor must file his bill before any steps have been taken to close the trust conveyance; and that the counsel calls special attention to his distinct concession in argument, that “if the conveyance for the benefit of' creditors is closed before the vendor endeavors to enforce his equity, or even if the first step in a legal forum is taken by the creditors, such creditors might obtain a priority, although notified of the existence of the vendor’s lien;” and he concludes that the vendor in that case, having filed his bill to enforce his lien before any steps were taken under the trust conveyance, by his diligence acquired that priority which at common law would have been given to his lien: ld.} 248.
Ve need not pursue this subject further. It is dear that creditors who have . acquired a valid, specific lien upon the estate are not to be assimilated to vol-mteers and purchasers under the vendee in the sense >f the law; and if this floating equity, misnamed in judicial parlance “the vendor’s lien,” be not quite a nyth, but a mere capacity in the vendor to acquire a lien if he chooses, then this same capacity belongs to others, who, as creditors, have rights just as meritorious as his. And we hold that the simple knowledge on the part of a creditor, that the vendor, sleeping from year .to year upon his rights, may, if he chooses, acquire a lien, as the creditor himself is about to do, can not even in a forum of conscience impair the value or af- *16 feet the validity of that lien so acquired by the creditor. In such case there is no mala fides — no fraud— no improper advantage taken by the one of the other; but the iace of diligence as just creditors being open to both alike, the one has lost and the other won.
Let the decree be affirmed and the bill dismissed.