The court consisted of Johns, Jr. Chancellor, (the appeal being from the decree of the late Chancellor) Clayton, Chief Justice,Harrington, Associate. Judges Black and Robinson did not sit.
Frame, for applts. defts. below: Arthur Milby owned a tract of land in Sussex County and sold it in 1817, to Budd Tuft; one-third to Budd and two-thirds to Tuft, for $26,000. Tuft conveyed his part to Budd soon after the deed from Milby. Shortly after this Budd executed a deed of bargain and sale of the premises to _________ Jones. This deed is alledged to be fraudulent; but the fraud is denied in Milby's answer. After this Budd conveyed the same lands to complainants, Busti Vandekemp, in trust for the Holland Land Company, to pay a prior debt — or mortgage it as the defts. contend. A large part of the consideration money on the original sale of Milby to Budd Tuft ($7835 47) still remains due and unpaid to Milby. *Page 70 
Milby has always continued in possession of the land, and after the sale from Budd to Busti Vandekemp, he bought in the title of Jones with a knowledge of the fact that there was a deed (informal, not being acknowledged) from Budd to Busti Vandekemp, but without any knowledge of the consideration of that deed.
The question is whether Milby has a lien for his consideration money, and whether the Chancellor erred in deciding against this lien.
The rule of Equity is that the vendor of lands has a lien for his purchase money or any balance thereof as against the vendee or his heirs and against purchasers from the vendee with notice. And I am free to admit that the purchaser bona fide without notice does not take land subject to this equitable lien. 2 Mad. Ch.
129, Sugd. 386, ch. 12, 733, ch. 13, s. 5, 10; 4 Brown, 420; 3 Eq. Ca. Ab. 682, n.; 2 Vez. sen.
622; 3 Bos. Pull. 183; 15 Vez. jr. 329, 37, c., I apply the cases — 1st. as if Busti Vandekemp had no notice — and here I take this distinction, which is well settled, that this principle that the party is a bona fide purchaser without notice is strictly a defence to be set up in resistance of a claims against him, but not a ground for relief against another. It is ashield and not a sword — a safeguard against attack, but not a means of assailing others. Mitfd. Pl. 215; 1 Mad.ch. 207; 2 do. 322-3-4; 16 Vez. 252; 1 Atk. 603; 1Vern. 246; 4 Russel 515; 2 Simon Stewart 472. If this distinction exists, it settles the case. Busti Vandekemp are the complainants below — asking relief against Milby. This defence can only be taken by plea — and a plea most specially guarded. It must aver entire want of notice, positively and not evasively — must aver the want of notice, up to the execution of the deed and payment of the purchase money — it must always aver that the vendor was in possession of the land, or it will not avail: And the plea must be verified by oath. All this shews that it is a defence very specially restricted: to be used only in a particular form. The want of notice is a negative and cant be proved: it must therefore be sworn to. Suppose it set forth in a bill for relief: it makes a case without evidence. On general principles this is merely a defence: it is a countervailing Equity to prevent the operation of another Equity. It may prevent the court from enforcing an Equity, but it cannot procure the action of the court to destroy that equity. To entitle to relief, complainants equity must be stronger than the respondents. The principle is not uncommon in Equity where the condition of the party as complainant or deft. will affect his right to relief: a man may have a good defence which is not the ground of suit. Though a purchaser for valuable consideration without notice shall not be prejudiced he shall not be assisted. 2 Fonb. 147 n.; 1do. 321, 50; 9 Vez. 33; 3 Atk. 517; 2 Merivale
427; 2 Fonb. 147, n.; Sugd. 557; Ambler 292; 3Vez. jr. 225; 18 Johns R. 544, c. 564-5-6-7-9. There is nothing in the case that can affect this question. It exists independently of any other ground of action. Complainants may be in court property, on the ground of fraud in Jones' deed, and may be entitled to a decree for the land; but they cannot get it discharged of this equitable lien. The relief sought against this Equity is entirely distinct from the relief against Jones' deed, as where the bill is to redeem a mortgage, the court will not afford, relief if the mortgagor owes other sums to the mortgagee but upon *Page 71 
payment of these. In relation to this deed of Jones the court will not scrutinize the manner of obtaining a legal advantage to protect an undoubted equity. Courts have gone a great way in recognizing such titles. Francis Max. 12; 2 Yez., sen. 573; 2 Vern. 158-9. There is no proof here to taint Milby with fraud in procuring this deed.
Second. We deny that Busti and Vandekemp were purchasers without notice. There is not one word in the bill denying notice; nor is it averred that Budd was in possession. It is distinctly averred in Milby's answer, that he was never out of possession of these lands, and there is no evidence to controvert this. This is constructive notice; sufficient to put the buyer upon inquiry into the title, and especially in this country, where the land always passes with the title. What is sufficient to put a man on inquiry is good notice; and there is no difference between actual and constructive notice. Notice that the title deeds are in another's possession is notice of his lien; much more is the possession of the land itself notice of a lien. Notice of possession by a tenant is notice of the lease. Possession is sufficient to put the party on inquiry, and what is sufficient for this purpose is notice. Sugd. 532, 533, 542; 13 Vez.; 2Yez. jr. 441; 1 Atle. 567; 9 Yez. 32; 3 do. 226.
Our positions then are 1st. That the matter of want of notice is only a defence. 2nd. If it could avail them as complainants, they must present all the requisites of which possession of their vendor is one. 3rd. That actual, or what is the same, constructive notice is proved.
Mr. Bayard, on the same side, cited for future referenceSugd. Vendors, 399; Paige R. 128; Ami. 724; 7Wheat. 46.
Mr. Rogers, for respdt's. compts.
Sugden is not supported by the cases cited; neither is Paige. Nor is he supported by Ambler, nor Brown. 7th Wheaton settles that whole matter and overrules Sugden and his authorities.
Second. I submit that this question of equitable lien is now started for the first time in this state, and that it is now within the province of this court to settle to what extent it is conformable to the state of things here, and how far it ought to be adopted. It is a branch of equity law to be adopted, and not merely recognized. Is it consistent with our alienation and lien laws? Our custom is to sell land on credit, and take bonds or mortgages. It is not settled in England what kind of security taken, will waive the equitable lien; and it would be monstrous to say that the securities usually taken here still left the land subject to the lien in the hands of the purchaser. The whole law of mortgages is different here from that in England. The laws alienating lands for debt are different; in England land can only be affected by elegit. Adopting the principles of equitable liens here would greatly trammel the alienation of lands. The establishing the doctrine in England has been the subject of regret: and T trust the courts here will not adopt it. Assuming that we are purchasers without notice, can we avail ourselves of it. The case has been argued as if we were using this principle as a sword and not as a shield How are the facts? Our hill goes upon no suchground. We come into court with a deed from Budd's wife; with the legal title; not *Page 72 
as a mortgagee, but as the legal owner of the fee simple, seeking relief against a fraudulent deed from Budd and wife to Jones, and an alienation from Jones and wife to Milby. This brought us into Chancery. We could not resist this deed at law, fraudulent as it is, and we had to resort to Chancery. So far from going into court to be relieved against Milby's equitable lien for purchase money the circumstances negative any knowledge on our part that such a lien existed or was pretended. The case therefore, in 18 Johnson and the other authorities are beside the question. That was the case of a purchaser without notice going into court solely to avoid the equitable lien. A good deal of refinement has been elaborated about the form of this defence and the mode of setting it up. But it is to be remembered that this is not what brought us into court. It is a matter coming up collaterally, and not any part of the relief sought; the lien is set up on the other side, and to this we are entitled to reply the want of notice, to avoid it. We act here as defts. and not as complainants. Where the claim is against a purchaser I admit he is to set up this defence by way of plea with the requisites contended for on the other side. Their argument on this subject rests on the assumed fact that Milby has been in possession, which we deny. From the date of Milby's deed the land was in possession of tenants, who became the tenants of Budd and Tuft. The attornment is the act. of the law. Mr. Hazzard says in his deposition, that he understood Budd took the rents of one of the farms. It is alleged that Milby has an equity which the court will protect; and, as we come into court asking its aid in relation to another matter, they will enforce that equally against us. I admit that in some cases, the court will do it, but not in such a case as this. The rule is only applicable to mere equities. We don't stand here on a mere equitable title; we have a legal title, and an equity that entitles us to inquire into a transaction affecting our legal title. The equity in favor of a purchaser without notice is peculiarly strong. He is more favoured than the holder of dormant liens. Fonb. 321, 50; Sugd. 722-3-4; 1 Mad. Ch. 526. We deny that Milby has any equitable lien. It was divested by his sale to complainants. The rule is that an alienation removes the lien unless the notice appears affirmatively. Notice must be brought home to the alienee. Where is the evidence? One of the cases cited' is that a knowledge of the lien by an agent, is constructive notice to the principal; the other cases amount to this, that a knowledge of a fact which necessarily leads to a knowledge of the lien is notice. They say Milby was in possession; but the testimony contradicts this, and his answer is not evidence. The question in the cause comes down to this, whether we are purchasers with notice of the lien, and whether that notice has been proved to the satisfaction of the court. 3 Russel 488; 2 Vern. 636; 1 T. R. 763; Co. L.
2906, 513; 4 Wheat. 292, n.; 3 do. 449, 50; 1Peters 241; 1 Vern. 445.
Mr. Bayard, for appellants, in reply.
We can't agree that the case comes down to the single question stated in the conclusion of Mr. Rogers' remarks.
First. The lien of the vendor for his purchase money is general;
the case of a purchaser without notice is an exception. Even here it exists, but there is a counter equity that prevents its operation. *Page 73 
The vendee is a trustee to the vendor as to unpaid purchase money. Examines 4 Wheat., and doubts it. The judges of the Supreme Court are constitutional lawyers. Their authority is high and unequalled in constitutional questions; but coming from different states where the common law has been adopted in greater or less extent, and more or less modified, they are not of such authority as the English decisions. The case itself shows looseness; omits notices of the cases cited in Ami., cites 1 Br. Ch. Rep.
incorrectly. The doctrine of equitable liens is founded on the doctrine of trusts. The court must always look to the conscience of the matter. The rules on the subject are well established in England, and under the constitutional provision this court will conform itself to these rules. It may be that this question of equitable lien is new; but the doctrines of trust are fully adopted, and this is a branch of them. A vendor sells his land and gives a deed with a receipt on it without receiving the purchase money; the vendee is his trustee until it is paid. And it is the very case for Chancery. Without its aid to affect the conscience of the vendee, he might hold the land without payment of the purchase money. There can be no doubt that as between vendor and vendee the Court of Chancery must enforce this lien; and, if you once establish the lien, it must affect all subsequent purchasers with notice. It is so with all trusts affecting third persons with notice. Implied notice, on all the principles of equity, is as available as express notice; and whatever is sufficient to put a man on his guard in relation to a lien, is sufficient to charge him with implied notice. Without the adoption of this rule the court cannot prevent fraud, and execute the rights of vendors against fraudulent vendees. The English rule is that all persons are affected by this lien except purchasers for valuable consideration without notice, and mortgagees who have loaned money on the faith of the land. Perhaps it ought to be extended here to judgment creditors who have loaned money on the faith of the land; but not to general creditors obtaining judgment. Purchase for valuable consideration without notice, is a positive bar to the lien. It must be pleaded with certain formalities, some of which grow out of his position; his oath, to disprove actual notice; and the averment that his vendor was in possession, to negative constructive notice. These are necessary to establish his innocence, and entitle him to protection. Without now inquiring whether this defence can be set up by a complainant, we may assume that as such he is not released from any of the obligations that would be incumbent on him in making defence as a deft. The complainants here have complied with none of these requisites: not even averred that Budd was in possession. They might have amended their bill, or replied specially to the answer. These omissions would be fatal to them as defts.
But they are not purchasers for valuable consideration. They are either trustees to Budd and stand in the same condition with him, or they are his mortgagees. The form of a mortgage is not material if it be substantially one. As a mortgage the deed is void by our law, it not being recorded; and if they are assignees to pay debts, they are mere voluntary purchasers, and bound by the lien without notice. *Page 74 
But as to the notice. Milby swears he was never out of possession, and we take the principle to be that it is notice of a lien to a purchaser if his vendor is not in possession, for possession is prima facie evidence of title, and the want of it is sufficient to put the party on inquiry as to the title. The depositions of the tenants show that they rented of Milby and paid him the rents; they do not even know the other parties. Milby distrained for rent; built houses; was assessed with the property and paid the taxes. The whole case and the decree show that Milby was in possession; and he is directed by the decree to account for the rents and profits.
Complainants come into court for a legal title, not with
one; they cannot recover at law until they avoid Jones' deed. They pray therefore, to be relieved against this deed, which Milby resists on the ground that he purchased from Jones for a valuable consideration, and, having a prior equity, (his lien) they are not entitled to relief against him without satisfying this equity. 1 T. R.
763. Milby swears that Jones told him he gave a valuable consideration for this deed, admitting at the same time, that he knew there was a subsequent deed from Budd to Busti and Vandekemp, but which he knew was not recorded. He therefore bought in Jones' title to protect his previous equity. He gave a valuable consideration for this purchase. Solemnly denies that he knew there was no consideration for the deed from Budd to Jones.
As to the policy of recognizing these liens in this country. The objection of secret liens does not apply. This is not a secret lien. As between vendor and vendee the lien can be no secret, for he must know whether the purchase money is paid: and complainants stand charged here with notice of the lien. As purchasers with notice they have no equity as against Milby.
 Curia advisare vult.
At the June Term, 1833, a majority of the court reversed the decree of the Chancellor, so far as to declare that Milby was entitled to receive the balance of the consideration money still due on the sale of the land. The court did not deliver any opinion at length, but it was understood that the question of equitable lien was not fully decided. Ch. Jas. Clayton went on the ground, that the deed from Jones to Milby was not proved to his satisfaction to be fraudulent. Harrington J., went more on the ground of the equitable lien, Milby having never been out of possession. He thought it a strong case of negligence on the part of complainants the subsequent purchasers of this land; there being other circumstances in the case, besides the possession of Milby, that ought to have put them on their guard as to title. The Chancellor and ChiefJustice were both disinclined to adopt this doctrine of liens;. butHarrington thought the court bound to recognize it. It has been the established doctrine of the courts of equity in England ever since the adoption, of our constitution, and our courts of equity are organized on the same principles with theirs; it results too from the general doctrine of trusts, which is fully established in our courts. It may be that these liens are impolitic in this country: but he thought the legislature should change the law if it was thought necessary to adopt a different rule.
 The Chancellor was for affirming the decree. *Page 75