JEROMUS V. D. B. VANDOREN and PETER VANDOREN v. JAMES W. TODD, PHILIP VANARSDALEN, LAWRENCE V. STUDDIFORD, Surviving Executor of PETER STUDDIFORD, deceased, The NEW-BRUNSWICK FIRE INSURANCE COMPANY, and RANDOLPH TITUS.

The vendor of real estate has a lien in equity upon the estate sold, for the purchase money.

The lien exists without any special agreement for that purpose, and it remains with the purchaser to show that from the circumstances of the case it results that the lien was not intended to be reserved.

The fact that the period of payment is dependent on the life of another person, will not affect the lien.

Nor will the lien be affected by the vendee giving his bond with security, where the security does not appear to have been given in pursuance of the contract, but upon the voluntary offer of the vendee.

That the purchaser was a man of property when he made the purchase, will not defeat the lien.

The lien will be enforced against the vendee and all persons claiming under him with notice of the equity.

So persons holding the bargained premises under an assignment made by an insolvent debtor, or by virtue of a conveyance from the assignee, will hold subject to the lien, though without notice of the incumbrance.

An assignment by operation of law passes the rights of an insolvent in the same plight and condition that he possessed them.

[Vandoren v. Todd et al.]

Persons taking under an assignment by operation of law, are not considered purchasers for a valuable consideration, in the proper sense of the words.

No person is entitled to the protection afforded to a bona fide purchaser for a valuable consideration without notice, without having made actual payment of the purchase money.

THE complainants, in their bill of complaint, set forth, that their father, Joseph Vandoren, late of the county of Somerset, was seized at the time of his death of a large and valuable real estate, consisting of divers tracts of land, particularly described in said bill; that being so seized thereof, he departed this life intestate, about the year eighteen hundred and one, leaving Sarah Vandoren his widow, and four sons and three daughters his heirs at law, most of whom, including the complainants, were at the time of their father's death, minors under the age of twenty-one years. That Sarah Vandoren, the widow of the said intestate, together with a part of his children, continued to occupy the homestead farm until about the month of March, A. D. eighteen hundred and fourteen, when Peter Vandoren, one of the complainants, and the youngest of the said heirs, attained the age of twenty-one years; at which time the said real estate was sold at public vendue, and purchased by the complainants, for eighteen thousand dollars, including the widow's right of dower therein; and that in pursuance of the said sale, the other children and heirs at law of the said intestate, by deed dated on the thirty-first day of May, A. D. eighteen hundred and fourteen, conveyed their respective shares in the said real estate to the complainants. That at the time of the delivery of the said deed, it was agreed between the complainants, and the other heirs at law, and Sarah Vandoren the widow of the said intestate, that the complainants should pay to the other heirs their legal shares and proportions of the sum of twelve thousand dollars—being two thirds of the purchase money—and that the remaining six thousand dollars, or one third of the said purchase money, should remain in their hands as a lien on the said lands, as and for the dower right of the said widow, during her natural life; the interest thereof to be paid annually by the complainants to her,

and on her death the principal to be divided amongst the heirs in proportion to their respective rights therein—the sons taking two shares each, and the daughters one share each. That in pursuance of said agreement, the complainants paid to the other heirs their respective proportions of the said sum of twelve thousand dollars, and entered upon and continued in the possession of the said lands and premises, until the seventh day of May, A. D. eighteen hundred and fifteen, when the complainants gave their joint bond to the said widow, in the penal sum of twelve thousand dollars, conditioned for the payment to her of the sum of four hundred and twenty dollars, (being the interest of six thousand dollars at seven per cent.) annually during her natural life ; and also their joint bond to each of the other heirs, conditioned for the payment to them of their respective proportions of the said sum of six thousand dollars on the death of the said widow—leaving the sum of twenty-four hundred dollars, the proportion of the said sum of six thousand dollars to which the complainants were entitled, unsecured otherwise than by their investment in said premises, the complainants being the owners thereof; which said several bonds were afterwards secured by a mortgage given by the complainants, bearing date on the twenty-first day of March, A. D. eighteen hundred and sixteen, upon a part of the said lands, containing about eighty acres, with the mills, buildings and improvements thereon, known as the mill tract. That on the twenty-third day of March, in the year last aforesaid, the complainants sold the said eighty acre tract, subject to the said mortgage, to Philip Vanarsdalen, for eighteen thousand dollars, and conveyed the same to the said Philip Vanarsdalen in fee, by deed bearing date on that day ; that by the terms of the sale, the said Philip Vanarsdalen was to pay the complainants twelve thousand dollars, being two thirds of the purchase money, and the balance, or six thousand dollars, was to remain an incumbrance on the lands so conveyed, until the death of Sarah Vandoren—the said Philip Vanarsdalen paying the interest therefor to the said widow during her life, and on her death to pay the principal to the complainants, to be distributed

[Vandoren v. Todd et al.]

among the heirs at law according to the original agreement among them; and that in pursuance of the said agreement, the said Philip Vanarsdalen executed to the complainants a bond conditioned for the payment unto the complainants of four hundred and twenty dollars annually on the first day of May, during the natural life of the said Sarah Vandoren, widow of the said Joseph Vandoren, deceased, and the sum of six thousand dollars within one month after her decease. That the intention of the said arrangement was, that the six thousand dollars should remain a lien on the said premises until after the death of the said Sarah Vandoren.

The bill further states, that the said Philip Vanarsdalen took possession of the said premises, and continued to hold and enjoy them, paying annually to the complainants the interest on his bond, until the thirteenth day of November, eighteen hundred and eighteen, when he sold and conveyed the premises in fee simple to Daniel Latourette; that Latourette purchased with full knowledge that the sum of six thousand dollars was a lien upon the said premises, and took title subject to the said lien. That on the eighteenth day of March, eighteen hundred and twenty, the said lands were sold by the sheriff of the county of Somerset, by virtue of a writ of fieri facias against the said Daniel Latourette, and were again purchased by the said Philip Vanarsdalen; that the said last mentioned sale, and conveyance in pursuance thereof, was made subject to all legal incumbrances, and that the said Philip Vanarsdalen knew that the said sum of six thousand dollars was an incumbrance thereon. That in the year eighteen hundred and twenty-one, the said Philip Vanarsdalen having become embarrassed, executed a deed or assignment of the said lands to Peter Studdiford, of the nature or contents of which the complainants are ignorant. That on the eighteenth day of March, the said Peter Studdiford, assignee of said Philip Vanarsdalen, sold and conveyed the said lands to Cornelius Vanhorn, who, by deed dated the first day of May thereafter, reconveyed the same in fee to the said Peter Studdiford. That no money consideration passed between the parties for the two last men-

tioned conveyances, or if there did, that the said conveyances were made with a full knowledge of the said lien.

That the said Peter Studdiford, having acquired a title to the said lands, and having recognized the said incumbrance of six thousand dollars by paying the interest thereof from year to year, departed this life in the year eighteen hundred and twenty-six, having executed his last will and testament in due form of law to pass real estate. That the executors therein named having proved the said will, sold the said lands at public vendue, on the thirteenth day of February, eighteen hundred and twenty-seven, to George G. Hall and James W. Todd, subject to a mortgage of six thousand dollars to Sarah Vandoren, and afterwards conveyed the same to the said purchasers in pursuance of the said sale.

That at the time of the last payment on said property to the executors of Studdiford, excepting the mortgage of six thousand dollars, a doubt being suggested by the said executors whether the twenty-four hundred dollars claimed by the complainants could be claimed by them, as the same was not included in the said mortgage, a special agreement was entered into between the executors of Studdiford, and Todd and Hall the purchasers, by which, among other things, it was distinctly stated, that the twenty-four hundred dollars, the right to which was disputed, formed a part of the said mortgage of six thousand dollars.

The bill further states, that the said George G. Hall afterwards died intestate ; that letters of administration were granted to the said James W. Todd, by whom, as administrator as aforesaid, the undivided half part of the said lands were, on the thirtieth day of March, eighteen hundred and twenty-nine, conveyed to one Cornelius T. Beekman, by whom the same were reconveyed, on the thirty-first day of the same month of March, to the said James W. Todd; by means whereof Todd became seized in fee of the said lands in severalty, subject to the payment of four hundred and twenty dollars per annum to the said Sarah Vandoren during her life, and also to the payment of the said sum

[Vandoren v. Todd et al.]

of six thousand dollars after her death to the heirs of the said Joseph Vandoren, deceased.

The bill further states, that two of the executors of Peter Studdiford have died, leaving Lawrence V. Studdiford the sole surviving executor; that Sarah Vandoren, the widow of the said Joseph Vandoren, died on the tenth day of November, eighteen hundred and thirty-four; that thereby the said sum of six thousand dollars became due to the heirs at law of the said Joseph Vandoren on the tenth day of December, eighteen hundred and thirty-four; and that the said sum of twenty-four hundred dollars, part of the said sum of six thousand dollars, then became due and payable to the complainants from the said James W. Todd. That on the sixteenth day of January, eighteen hundred and thirty-five, the said James W. Todd mortgaged the premises to the New-Brunswick Fire Insurance Company, to secure the payment of six thousand dollars; and that he has paid and satisfied all the interest due to Sarah Vandoren, the widow of Joseph Vandoren, and also the sums due to all the other heirs except the complainants; and also that he has contracted in writing to sell and convey the said premises to one Randolph Titus, for nineteen thousand dollars.

The bill prays that Todd, the defendant, may be decreed to pay to the complainants the said sum of twenty-four hundred dollars, with interest thereon from the tenth day of December, eighteen hundred and thirty-four, or that in default thereof the defendants may be foreclosed of and from all equity of redemption in the said lands and premises; that the said lands and premises may be sold, and that out of the proceeds the complainants may be paid the full amount of said principal and interest, with costs.

Separate answers were filed by Todd, Vanarsdalen and Studdiford's executor, three of the defendants; and the cause came on for hearing upon the bill, answers, replications and proofs.

The chancellor having been of counsel with one of the parties, the cause was heard by his direction before Elias Vanarsdale, esquire, one of the masters of the court.

[Vandoren v. Todd et al.]

*Nevius* and *T. Frelinghuysen*, for complainants.

*Hartwell*, *W. Thomson* and *Scott*, for defendants.

THE MASTER. The matter in controversy in this suit, is twenty-four hundred dollars and interest, which became payable after the death of Sarah Vandoren, the widow of Joseph Vandoren, of the county of Somerset, who died intestate in the year of our Lord eighteen hundred and one, leaving several sons and daughters his heirs at law. In March, in the year of our Lord eighteen hundred and fourteen, after the youngest child arrived at full age, the real estate of the said intestate, consisting of a farm, with mills thereon, and which is frequently called the mill property, and a lot of woodland, was sold at public vendue, and purchased by Jeromus V. D. B. Vandoren and Peter Vandoren, two of the said sons, for the sum of eighteen thousand dollars. One third of the purchase money, being six thousand dollars, was to remain on interest, at seven per cent. and be paid to the widow, during her life, in lieu of her dower, and the principal to be divided, one month after her death, among the children of the intestate, according to law, viz. one share to each daughter, and two shares to each son. The complainants afterwards gave a mortgage on the same to the widow, to secure the sum of four hundred and twenty dollars yearly, being the interest of the said six thousand dollars; and to secure to the other heirs their shares, amounting to three thousand six hundred dollars, according to bonds given for their proportions thereof—no mention being made in said mortgage of the balance of the said six thousand dollars, which was the two thousand four hundred dollars, the proportions belonging to the complainants.

In March, in the year of our Lord eighteen hundred and sixteen, the complainants sold and conveyed the farm to Philip Vanarsdalen, for about nineteen thousand dollars; of which purchase money six thousand dollars was to remain until after the death of the said widow, and for which the said Philip Vanarsdalen gave his bond to the said complainants, in the penal sum of

[Vandoren v. Todd et al.]

twelve thousand dollars, conditioned to pay the complainants four hundred and twenty dollars, on or before the first day of May, in the year of our Lord eighteen hundred and seventeen, and the like sum of four hundred twenty dollars, on or before the first day of May in every succeeding year, during the natural life of the said widow, and the sum of six thousand dollars within one month after her decease. Philip Vanarsdalen possessed the farm, and paid the interest on his bond, until in November, in the year of our Lord eighteen hundred and eighteen, when he sold and conveyed the said farm to Daniel Latourette, for about nineteen thousand dollars, subject to a lien of six thousand dollars, to be paid to the heirs of Joseph Vandoren upon the death of their mother, which was considered a part of the purchase money, and deducted from it; and when it was afterwards, in the year of our Lord eighteen hundred and twenty, sold by the sheriff as the property of the said Daniel Latourette, it was sold subject to the said six thousand dollars, and purchased again for one hundred and fifteen dollars, by the said Philip Vanarsdalen; who afterwards, in eighteen hundred and twenty-one, became embarrassed in his circumstances, and the said farm was assigned and conveyed by him to Peter Studdiford, who held and claimed the same as assignee of the said Philip Vanarsdalen, an insolvent debtor, appointed by the court of common pleas of the county of Somerset, as is set forth in his deed, dated March eighteenth, eighteen hundred and twenty-two, to Cornelius Vanhorn; in which last mentioned deed, in consideration of nine thousand dollars, the said Peter Studdiford conveyed the said farm to the said Cornelius Vanhorn—who reconveyed the same to the said Peter Studdiford, for the consideration of nine thousand dollars, by deed dated the first of May, eighteen hundred and twenty-two; besides the same consideration, both deeds are acknowledged before the same master in chancery, on the same day, and on the same day left in the clerk's office to be recorded.

It does not appear that this conveyance and reconveyance was for any other purpose than to vest in the said Peter Studdiford the title to the said farm, to be held as purchaser thereof, and not as

assignee of the said Philip Vanarsdalen. In eighteen hundred and twenty-six, Peter Studdiford departed this life; and in eighteen hundred and twenty-seven, Lawrence V. Studdiford, Cornelius Vanhorn and John Frelinghuysen, executors of the said Peter Studdiford, deceased, sold and conveyed the said farm and mills to George G. Hall and James W. Todd, for eleven thousand two hundred and ninety dollars, as set forth in their deed for the same. The said George G. Hall having died intestate, his undivided moiety or half of said farm was sold by his administrator, the said James W. Todd, to Cornelius T. Beekman, by deed dated March the thirtieth, eighteen hundred and twenty-nine, and he, by deed dated the day following, conveyed the same undivided moiety to the said James W. Todd. Two of the executors of the said Peter Studdiford are since dead; and the said widow of Joseph Vandoren also died November tenth, eighteen hundred and thirty-four.

It is charged in the bill, that the said James W. Todd mortgaged the said farm and mills to the New-Brunswick Fire Insurance Company; and also, that he agreed to sell the same to Randolph Titus.

Separate answers have been put in to the complainants' bill, by Philip Vanarsdalen, Lawrence V. Studdiford surviving executor of Peter Studdiford, and by James W. Todd; to which replications have been filed, and several witnesses examined, and exhibits made. As to the other defendants, no answers have been filed. Peter Vandoren, one of the complainants, having died, an order was made, in October last, that his administrators, Henry H. Wilson and Sarah Vandoren, be made complainants in this suit, in the place of the said Peter Vandoren.

By an order of this court in April, eighteen hundred and thirty-five, the complainants' bill appears to have been taken as confessed against the said James W. Todd, Peter Vanarsdalen, (no doubt intended for Philip Vanarsdalen,) Lawrence V. Studdiford, surviving executor of Peter Studdiford, deceased, and Randolph Titus. So far as regards the defendants who have filed answers, this decree may be considered irregular or waived;

and as respects the defendants, the New-Brunswick Fire Insurance Company, no process of subpœna appears to have been issued, nor have they appeared to the complainants' said bill, nor was any objection taken thereto on the hearing by the other defendants. As the disputes between the other defendants and the complainants may be decided without the said Fire Insurance Company being parties, any discovery or relief as against them may be considered as waived by the said complainants, and their bill as respects the said Fire Insurance Company, must be dismissed out of this court, without prejudice to the right of any party in this suit : 2 *Atk.* 296 ; 3 *Atk.* 400.

By the articles of vendue for the sale of the real estate of Peter Studdiford, the farm in question was sold subject to a mortgage thereon of Mrs. Sarah Vandoren, of six thousand dollars. By a subsequent agreement in writing, bearing date October eighteenth, eighteen hundred and twenty-seven, executed by the executors of the said Peter Studdiford and the said James W. Todd, it is among other things stated, that the said farm was purchased for eleven thousand two hundred and ninety dollars, of which six thousand dollars was a mortgage on the property in favor of the widow Sarah Vandoren. It further states ; " and whereas difficulties have arisen in relation to a part of the amount of said mortgage, that is to say, the sum of twenty-four hundred dollars, whether, after the death of the said Sarah Vandoren, the said sum is to be paid to the estate of the said Peter Studdiford, or to Jeromus V. D. B. Vandoren and Peter Vandoren, two of the heirs of the estate of Joseph Vandoren, deceased, both parties having made known their intention to claim the same." The writing then certifies, " that the sum of twenty-four hundred dollars is a part of the incumbrance of six thousand dollars mentioned in the conditions of sale, and part of the sum of eleven thousand two hundred and ninety dollars mentioned in the said conditions as the purchase money, and that the property is liable for the same after the death of the said Sarah Vandoren, to whomsoever may be lawfully entitled to the same." And among other things in the said writing set forth, " it was expressly stipulated on the part of

the said James W. Todd, that he does not by this instrument intend to recognize in any manner of way, any right of either party, or himself and partner, to said sum of twenty-four hundred dollars; but that he simply means to have it understood, that the sum alleged to be in controversy is a part of the six thousand dollar mortgage or incumbrance mentioned in the articles of sale, and part of the purchase money, and that the property is liable for the same, upon the death of the said Sarah Vandoren, to any person who may be legally entitled." The farm purchased as aforesaid, is thereby admitted by the said James W. Todd to be liable, without dispute, for the twenty-four hundred dollars in controversy, to whomsoever is entitled to that money.

Upon examining the accounts of the executors of the Rev. Peter Studdiford, the second item of charge is, " To amount of sale of mill property, seventy-eight acres, to James W. Todd, subject to the payment of the interest on six thousand dollars thereof at seven per cent. until the death of Sarah Vandoren, and then to be paid accountants to redeem mortgage, eleven thousand two hundred and ninety dollars;" and the first item on the credit side of said account is, " By amount retained for widow Sarah Vandoren, interest on mortgage, six thousand dollars." After deducting the allowances to the executors from the charges against them, there is not sufficient to satisfy the claims of creditors exhibited under oath, but leaves the estate insolvent more than two thousand dollars ; and by the orphans' court the estate is declared insolvent, and the executors are for ever discharged from any further claim than a dividend pro rata for creditors.

From these proceedings it plainly appears that the executors, the surrogate, and the court, considered the six thousand dollars deducted as not belonging to the estate of Peter Studdiford, deceased. If, however, such incumbrance existed only as to thirty-six hundred dollars, whether the twenty-four hundred dollars balance would belong to his creditors or the creditors of Philip Vanarsdalen, could not be determined without further proceedings and proofs, inasmuch as there is no new assignee of the said

Philip Vanarsdalen before the court, (*Rev. L.* 762,) which would be necessary to prevent all further disputes respecting the same; nor have the proceedings of the said Philip Vanarsdalen as an insolvent debtor, or articles of vendue of his assignee the said Peter Studdiford, deceased, or his will, been given in evidence in this cause. In the view taken of the subject, however, the balance belongs to none of the said creditors.

In the articles of vendue, it is said to be a mortgage of Mrs. Sarah Vandoren of six thousand dollars. In the articles of agreement aforesaid, it certifies that the sum of twenty-four hundred dollars is part of the incumbrance of six thousand dollars mentioned in the conditions of sale. In the charge against the executors for the amount of sale, it is subject to the payment of interest on six thousand dollars thereof at seven per cent. until the death of Sarah Vandoren, and then to be paid accountants to redeem mortgage; and in the credit, is amount retained for widow Sarah Vandoren, interest on mortgage, six thousand dollars.

From the various modes of referring to this incumbrance, its amount is always the same, but to whom it is due is variously stated. To entitle the complainants to recover, they ought to establish that six thousand dollars was a lien or incumbrance on the farm when they sold it to Philip Vanarsdalen, which continued until purchased by the defendant Todd, of which the twenty-four hundred dollars in controversy is the part due to them. There was of record the mortgage to secure the interest to Sarah Vandoren during her life, and after her death to secure several sums to persons therein named, amounting to thirty-six hundred dollars, which have been paid, being the shares of the other heirs of the said Joseph Vandoren, and are no longer in controversy, and were the mortgage and bonds given by Jeromus and Peter Vandoren while they owned the farm; when they sold it to Philip Vanarsdalen, they took his bond for six thousand dollars, as before mentioned, for part of the purchase money. This bond still remains unpaid, except so far as the payment of interest and thirty-six hundred dollars, as before mentioned, is considered a satisfaction, leaving twenty-four hundred dollars still due thereon

to the complainants; and if Philip Vanarsdalen was prosecuted on his bond, it is not perceived that he could make any defence as respects the payment thereof. This twenty-four hundred dollars, so due, is part of the unpaid purchase money on the sale of the said farm to Philip Vanarsdalen ; and without paying the same the contract was not complete on his part, and that money remained a lien on said farm at and after the sale thereof. In respect to the unpaid consideration money, the vendee is held to be a trustee for the vendors. Prima facie, the lien exists without any special agreement for that purpose, and it remains with the purchaser to show that, from the circumstances of the case, it results that the lien was not intended to be reserved : 4 *Kent's Com.* 152, 2d edition.

The lien for unpaid purchase money on the sale of real estate, appears to have been recognized and enjoined in chancery in many cases. In *Mackreth* v. *Symmons*, 15 *Ves.* 329, is a decision by lord Eldon, that the vendors have a lien for unpaid purchase money against the vendee and others with notice, containing an elaborate investigation of the cases on this subject, and to which I refer to save a review of them. In *Grant* v. *Mills*, 2 *V. and B.* 306, the doctrine respecting the vendor's lien was not disputed. See also *Hughes* v. *Kearney*, 1 *Sch. and Lef.* 135. In ex parte *Peak in re Lightoller*, 1 *Mad. R.* 196, the vice chancellor says, " A great variety of cases establish it as a clear equity, that a vendor has in all cases a lien upon the estate sold for the purchase money, unless there has been a special agreement extinguishing that equity." In *Winter* v. *Ld. Anson*, 3 *Eng. C. R.* 496, part of the consideration money was secured by bond with interest at four per cent. and so to remain during the life of the vendor. On appeal from the vice chancellor's decision that the lien was discharged, the lord chancellor says, " The circumstance that the money was to be paid at a future day, does not affect the lien." " I do not think that the lien is affected by the fact of the period of payment being dependent on the life of the vendor." The period of payment in this case being dependent on the life of the vendor's mother, does

52

not alter the lien.    I consider that the lien for unpaid purchase money, is now the established law in England; and the same doctrine has been recognized and established in *Garson* v. *Green*, 1 *John. Chan. R.* 308 ; 9 *Cowen,* 316 ; 1 *Paige*, 20 ; 3 *Paige*, 513 ; 4 *Kent's Com.* 152.   In *Gilman* v. *Brown et al.*, 1 *Mason*, 212, justice Story says, it can hardly be doubted that the doctrine of lien was borrowed from the civil law ; and considers the law as settled as between vendor and vendee, and all claiming under the latter with notice of the non-payment of the purchase money : 4 *Wheat.* 255, s. c.

 * But it is objected to this lien, that the purchaser gave his bond for the six thousand dollars, and thereby extinguished the lien. In 2 *V. and B.* 306 ; 1 *Mad. R.* 346 ; 1 *Sch. and Lef.* 135 ; 3 *Eng. C. R.* 495 ; 1 *John. Chan. R.* 308 ; it was held, that taking the bond, bill or note of the vendee did not discharge the lien ; and in 4 *Kent's Com.* 153, 154, (n. b.) the better opinion is, that taking a note, bond or covenant from the vendee, for the payment of the money, is not of itself an act of waiver of the lien, for such instruments are only the ordinary evidence of the debt.

 · That Philip Vanarsdalen was a man of property when he made that purchase, does not appear from any case cited to be sufficient to defeat the lien ; nor in case, as he states in his answer, that in one of the bonds he gave security, when it does not appear to have been in pursuance of his contract, ought the lien to be affected, when he further states that the giving the security was his own voluntary offer.

 * Although this lien is an invisible trust, known only to the vendor and vendee and those that have notice, and is not without its difficulties, yet there seems to be that natural justice and equity which ought to induce the court to enforce it, especially in cases where the parties understood it, and no one is defrauded thereby. *,

Upon an examination of the testimony taken in the cause, much important evidence is given tending to prove the existence of this lien, and the actual knowledge thereof by the purchasers of the property in question.   The deposition of Sarah Schenck,

one of the daughters of the said Joseph Vandoren, deceased, proves the sale in eighteen hundred and fourteen to Peter and Jeromus, and that six thousand dollars was to remain on interest, and be paid as before stated. The same witness further says; Her brothers sold the property to Philip Vanarsdalen in eighteen hundred and sixteen. After stating the possession of her mother and Latourette, the witness further says; "The Rev. Peter Studdiford became the purchaser of said premises, under whose purchase the sum of six thousand dollars was to remain on said property." It appears from the same deposition, that after the defendant, Todd, purchased from the executors of Studdiford, and a bond was demanded for twenty-four hundred dollars for the benefit of Studdiford's creditors, Todd said, likewise, that it did not belong to the estate of Mr. Studdiford, but to deponent's two brothers; and Todd would not give such an instrument, he, Todd, saying, "it was their (Peter and Vanderbilt's, the complainants') just due, and belonged to no one else." And the witness on other occasions has heard him, Todd, make the same remarks to the same effect.

From the testimony of Daniel Latourette, it appears that he owned the property in question, and bought it of Philip Vanarsdalen for something like twenty-one thousand dollars. "He bought it subject to a lien of six thousand dollars, to be paid to the heirs of Joseph Vandoren upon the death of their mother, and to their said mother the interest to be paid during her life. The six thousand dollars was considered at the time of the said purchase, part of the purchase money, and deducted from it. When it was again sold afterwards by the sheriff of Somerset county, it was sold subject to the said six thousand dollars, and Philip Vanarsdalen again became the purchaser."

Arthur Schenck says, he met Todd on the road, before Mrs. Vandoren's death. "Mr. Todd then said there was six thousand dollars of the purchase money of said property, of which Peter and Vanderbilt Vandoren ought to have a share, but he thought it would cause a lawsuit." The witness also says, he was present at the sale by the executors of Studdiford. It was stated

[Vandoren v. Todd et al.]

that there was six thousand dollars to remain on the said property, and that the property was to be sold subject to said six thousand dollars."

John J. Schenck, another witness, says: "Deponent was present at the time of the sale, when Mr. Todd was the purchaser thereof, sold by the executors of Studdiford. The said property was sold subject to the six thousand dollars on mortgage." Also, "Witness recollects hearing Mr. Todd saying he wished for the privilege of paying off the six thousand dollars, as it would save him some interest. At the time of sale witness did not hear any claim made by the executors of Mr. Studdiford to the twenty-four hundred dollars."

Cornelius Peterson says, he was present at the sale of the mill property by the heirs of Joseph Vandoren, deceased. "At this sale one third of the purchase money was to be on the property during the widow's life. The interest to be paid to the widow during her life, and the principal after her death. Was present at the subsequent sale by the executors of Mr. Studdiford. Thinks it was sold at this sale at eleven thousand two or three hundred dollars. During the time that Latourette owned the property, the six thousand dollars was considered a lien upon said property."

Abraham D. Baird, another witness, relates conversations with Philip Vanarsdalen, which do not in some respects corroborate the statement made in his answer respecting the lien on the property at his first purchase thereof; and, among other things, the witness also says, "He, Vanarsdalen, said, that as he had lost so much by the property, in strict justice the money ought to belong to him, Vanarsdalen." On cross-examination on the part of the defendants, witness says, "that the six thousand dollar bond spoken of, was the incumbrance upon the property, so understood from Vanarsdalen and others, the same for which the mortgage was given, and for which he, Vanarsdalen, had paid the interest to the old lady."

It also appears from the deposition of Isaac Vanarsdalen, that in conversations with Philip Vanarsdalen, but the time when

[Vandoren v. Todd et al.]

does not appear to be stated, that the witness understood him, (Philip Vanarsdalen,) that Peter and Vanderbilt were entitled to their share of the six thousand dollars. From the testimony of John I. Gaston it appears, that the twenty-four hundred dollars for which the defendant Todd was bound, the witness was applied to by the said defendant to assist him in getting clear of. He, Todd, further said, that " he did not mean to pay it if he could avoid it."

These were complainants' witnesses. There were also two witnesses examined on the part of the defendants, principally to prove that Philip Vanarsdalen, when he purchased the mill property, was in good circumstances, and considered an industrious and thriving man ; and one of them says he lost his property by the depreciation in value and by other circumstances.

From an examination of this testimony, I am satisfied, that on the sale by Jeromus and Peter Vandoren to Philip Vanarsdalen, six thousand dollars of the purchase money was understood between them to remain a lien or incumbrance on the property in question—the interest to be paid to the widow Sarah Vandoren during her life, and the principal to be paid in one month after her death, for the heirs of Joseph Vandoren. That this same lien continued while the property was owned by Daniel Latourette, and when sold by the sheriff to said Vanarsdalen. That when he assigned it as an insolvent debtor for the benefit of his creditors to Peter Studdiford, as before mentioned, it was then, and still is, charged and chargeable with this lien. The assignment, by operation of law, passes the rights of the insolvent in the same plight and condition that he possessed them : *Sugden*, 364 ; 1 *Vern.* 267 ; 2 *Mad. C.* 128 ; 9 *Vesey*, 100 ; 2 *John. Chan. R.* 443 ; 10 *John. R.* 540.

In the case of *Bayley* v. *Greenleaf, 7 Wheat.* 46, the lien for purchase money was attempted to be established against a mortgagee who had entered into engagements, and for further advances. The court would not allow the lien against creditors holding a bona fide conveyance from the vendee. In the cause in question, I consider the defendants holding under assignment

by operation of law, and differing from the case decided by the court. That such a difference exists, will appear from the words cited by the court, page 56 of the master of the rolls, (9 *Vesey*, 100,) an extract from which is as follows: "I have always understood the assignment from the commissioners, like any other assignment by operation of law, passed his rights precisely in the same plight and condition as he possessed them; even where a complete legal title vests in them, and there is no notice of any equity affecting it, they take subject to whatever equity the bankrupt was liable to. This shows they are not considered purchasers for a valuable consideration, in the proper sense of the words," &c.

There does not appear to have been any money or valuable consideration paid or given upon the conveyance of the said premises from Studdiford to Vanhorn, and reconveyance by him to Studdiford. In Studdiford's deed, it is expressed to be subject to all lawful incumbrances thereon after devoting the purchase money to their payment as far as the same may be sufficient. In Vanhorn's deed, he covenants as to his rights conveyed by his assignee. These are unusual words in common conveyances, and from all the facts and circumstances connected with those deeds, it appears that whatever incumbrances existed were not changed by the transfer and retransfer of the property. It appears that Peter Studdiford knew of, and recognized the debt that Philip Vanarsdalen owed for the property, by an indorsement on his bond for six thousand dollars, on the twenty-fifth of April, eighteen hundred and twenty-two, when John Frelinghuysen, one of the agents of the Rev. Peter Studdiford, who was assignee of Philip Vanarsdalen, paid four hundred and twenty dollars interest on that bond, which was received and a receipt signed for the same by Sarah Vandoren.

And to all this is to be added the acts, proceedings and accounts of the executors of Peter Studdiford, before mentioned, whereby the payment of this lien or incumbrance of twenty-four hundred dollars is provided for, and the purchaser is bound to pay it as the court directs. On the hearing of this cause there

was exhibited, without objection, a mortgage given on this property in eighteen hundred and twenty, by Philip Vanarsdalen to Peter Studdiford, to secure the payment of five thousand dollars, with interest, according to the condition of his bond therein mentioned, which mortgage was cancelled in eighteen hundred and thirty-four, and which is marked by me, Exhibit P. V. A. No. 1, on the part of the defendants. If this evidence is intended to prove a debt due to Peter Studdiford, it is not so set up or insisted on in the answer of his executor, nor is the bond referred to in that mortgage, nor the accounts of Peter Studdiford as assignee of Philip Vanarsdalen, in evidence in this cause. The mortgage thus standing alone, is not sufficient evidence of any demand on that property. If any thing was due on that mortgage to Peter Studdiford, whether it was taken with or without notice of the lien claimed by the complainants, are facts not in issue; and whether said mortgage was not entitled to priority over said lien, is a question not raised, and upon which no opinion is intended to be given. From the time of the purchase of Philip Vanarsdalen, as before mentioned, no one alleges that he has been defrauded by the lien in question, or proves that the complainants have received this twenty-four hundred dollars; nor is there any one who claims that sum that proves himself a bona fide purchaser, paying his purchase money, without notice; for without having paid his money, he is not entitled to the protection of such a purchaser: *Jewett* v. *Palmer, 7 John. Chan. R.* 65.

The result of the consideration which I have given to this case, is: That the complainants ought not to have brought separate suits, as was insisted on by the defendants, but very properly joined in the suit when they filed their bill; and that the present complainants are entitled to the twenty-four hundred dollars in question. With respect to the interest on that sum, which Todd objects to paying pending this controversy, there is no allegation in the answer of the said James W. Todd, that he has ready the amount of principal and interest, nor any offer to pay the same into court when directed; but says, the complainants

and Studdiford's executor demand the twenty-four hundred dollars, so that this defendant cannot act safely in the premises but by the order and under the direction of this honorable court. There is no allegation that the money has been unemployed, or that he has sustained any loss thereby, but desires to act under the direction of the court. If he wished to have the same benefit as a complainant in a bill of interpleader, he ought at least to have conformed to the offers in such a bill. But as the said James W. Todd did not, by his answer on file, attempt to get clear of the payment of the said twenty-four hundred dollars, and may have the money ready and unemployed by reason of this controversy, interest must be allowed and computed as is herein after directed.

I do, therefore, advise your excellency to dismiss the complainants' bill as against the New-Brunswick Fire Insurance Company, without prejudice to any party; and to vacate and set aside the decree pro confesso against the defendants who have answered; and to declare and decree, that the complainants are entitled to the said twenty-four hundred dollars, with interest at six per cent. for the delay of payment, from the tenth day of December, eighteen hundred and thirty-four, being one month after the death of the said widow of the said Joseph Vandoren, until the date of the said master's report; and that the same constitute an equitable mortgage, lien and incumbrance on the property in question, sold by the executors of the Rev. Peter Studdiford, and now owned by the defendant James W. Todd, and that the said premises are chargeable therewith, and charged accordingly with the same; that it be referred to one of the masters of this court to take an account of what is due to the said complainants, for the said principal and interest as aforesaid, and fix a day for the payment thereof. But if the said James W. Todd shall pay the said twenty-four hundred dollars into this court, which he has liberty to do, and produce a certificate thereof to the said master before he finishes his report, the said master shall then compute interest from the tenth day of December, last aforesaid, to the time of such payment into court, and may then inquire how long that

[Vandoren v. Todd et al.]

money has been in the hands of the said James W. Todd, unemployed, since the said tenth day of December, eighteen hundred and thirty-four, and ascertain the loss of interest, if any, occasioned thereby ; which loss of interest is to be deducted from the amount of interest computed as aforesaid; and such interest, or the balance thereof, if any, must likewise be paid into court without delay. That the said master make his report with all convenient speed, and that all further equity and directions, and the question of costs, be reserved until the coming in of the said master's report, for the further order and decree of this court.

ELIAS VANARSDALE, Master in Chancery.

Decree accordingly.