The opinion of the Court was delivered by
Dunkin, Ch.
The first and principal ground of appeal relates to the judgment of Green B. Montgomery, Sr. It is true that when the plaintiff seeks to invalidate a judgment on the ground of want of consideration, which is denied by the answer of the judgment creditor, the defendant may, under ordinary circumstances, rely on his answer without further proof. In this case the plaintiffs alleged and proved a fraudulent intention on the part of Green B. Montgomery, Jr., to defeat the claim of the plaintiffs, and that, in pursuance of such intention, he had procured the deed of the lands and mills to be executed to his son, James B. Montgomery. It was charged that the several judgments to his father, Green B. Montgomery, Sr., to his mother-in-law, Mrs. Bailey, and to his son-in-law, entered on the same day, were without consideration, and for the same purpose. It was furthermore charged that at the sales subsequently made, the whole of the property of the debtor (with a very inconsiderable exception) was bid off by his family, and has ever since remained in his possession “and under his dominion and control as before the sale.” This was established before the Chancellor, and under the evidence the purchase of four of the slaves by the defendant, Green B. Montgomery, Sr., as well as other purchases on the same occasion, were set aside, and this judgment has the-concurrence of the whole Court. It was under *131 these circumstances, that the Chancellor ruled that, although “a father has the same right as a stranger to save his just claims, if he can, in the wreck of his son’s affairs, yet that it was a matter affecting character, and it was simply the result of the common sense, or the sense of equity of mankind, that he should manifest that his claim is really just, and that he has not improperly yielded to the bias of paternal affection in any effort to screen the property of his son.” The Chancellor held that “ under the circumstances of suspicion attending the judgments, and when they were directly assailed, the defendant should have proved the indebtedness of his son to him.” He offered no evidence whatever. It was said for him here this was attributable to the absence of his counsel. This seems a misapprehension. The solicitor, who filed his answer, not only attended the references, but represented another judgment assailed on the same grounds, and took care to adduce evidence of the consideration which was sustained by the Court.
Although the Chancellor set aside this judgment as well as that of Nancy Bailey, (from which latter there is no appeal,) he allowed the defendant, Green B. Montgomery, Sr., to come in among the general creditors. A reference was accordingly had, and it is now asked to review and reverse the judgment upon the new evidence adduced. This would lead to great embarrassment. Evidence was not only given of an indebtedness, to some extent, from Green B. Montgomery, Jr., to his father, between 1842 and 1852, but evidence was also given that, during that time, Green B. Montgomery, Sr., was not in a condition to lend money to his son, or to any one else— much less to extend long credits. The Chancellor has said in his decree, that as to the alleged embarrassment of Green B. Montgomery, Sr.’s affairs he knew nothing from the evidence before him. It is not proposed to comment, in any manner, upon the new evidence, which might have a tendency to pre-judge questions that may arise upon the commissioner’s report. In determining the merits of an appeal, it *132 would be great injustice to the Chancellor, and, not unfre-quently, much greater injustice to the parties, to admit the influence of evidence which might have been adduced, but was not before the Court. In this case the evidence on each side has introduced a very material element to aid the judgment in determining the existence and extent of the defendant’s claim as a general creditor of Green B. Montgomery, Jr., but it can have no weight to strengthen or invalidate the original decree.
Another ground of appeal is, that the note in favor of David McDowell should have precedence of payment out of the proceeds of the sale of the mill tract, because the note was given for the purchase money. In this State the doctrine has never prevailed, that the vendor of land has an equitable lien for the payment of the consideration. While something is due to the vendor who parts with his property, not less, certainly, is due to the subsequent creditor who has trusted the ostensible as well as legal owner of the estate, without any knowledge of a secret incumbrance. Upon this subject the language of Chief Justice Marshall, in Bailey vs. Greenleaf, 7 Wheat., 46, 50, is instructive. “ To the world,” says he, “ the vendee appears to hold the estate, divested of any trust whatever; and credit is given to him, in the confidence that the property is his own, in equity as well as law. A vendor, relying upon this lien, ought to reduce it to a mortgage, so as to give notice of it to the world. If he does not, he is, in some degree, accessory to the fraud committed on the public, by an act which exhibits the vendee as the complete owner of an estate on which he claims a secret lien. It would seem inconsistent with the principles of equity, and with the general spirit of our laws, that such a lien should be set up in a Court of Chancery, to the exclusion of bona fide creditors.”
The only authoritative decision in our own Courts, is that of Wragg vs. Creditors of Andrew Irvine, which was the judgment of a full Court, and is reported 2 DeS., 509. In *133 that case, Chancellor Rutledge, speaking for the Court, wholly repudiates the claim of “ a bond creditor to have an equitable lien on the land he has sold, unless he has taken care to secure that lien by a mortgage;” and such, he says, has been the law of this country for at least sixty years past. More than half a century has elapsed since that decision, and, although, in a note to the case, further examination of the subject may seem to have been invited, the Court is not aware of any subsequent decision of this tribunal arraigning the judgment in Wragg vs. Comptroller General et al., creditors of Irvine. It may be added, that the Act of 1S43, requiring ail mortgages of real estate, however formal and perfect, to be recorded within sixty days, may well be regarded as a legislative declaration of the prohibitory policy of the country against any such secret liens.
The Court has said thus much in deference to the earnest and elaborate argument submitted by the appellant’s counsel. But it is clear on the facts as before us, that, neither in Great Britain, nor elsewhere, in which the doctrine of the vendor’s equitable lien is fully recognized, could the claim of the appellant be maintained. According to the report of the Chancellor, the vendor, in selling the premises to Doag, never relied on this evanescent and doubtful equitable lien, but took from him a mortgage of the premises to secure the purchase, money. When Doag afterwards conveyed to Montgomery, part of the consideration money was paid in cash to McDowell, and, for the balance, he took from Montgomery his single bill, with two sureties, and gave up or released his mortgage. Under these circumstances it would be vain, according to any of the authorities cited, for McDowell to resort to his original equitable lien, when he had surrendered his legal mortgage for another and satisfactory security, which he was content to receive. It is, perhaps, just to remark, as was suggested at the bar, that this appeal is prosecuted, not so much in behalf of McDowell, as of the sureties to the single *134 bill who desire to be subrogated to his supposed equitable lien.
This Court has already intimated a concurrence in the views of the Chancellor, in reference to the re-sales ordered; nor, in relation to the other grounds of appeal, is it deemed necessary to add anything to the reasoning of the decree.
It is ordered and decreed, that the judgment of the Circuit Court be affirmed, and the appeal dismissed.
Wardlaw, Ch., concurred.

Appeal dismissed.